238 So.2d 709

Ex parte N. S. Whitman et al., a Corp.

In re N. S. WHITMAN et al.

v.

Hon. Telfair J. MASHBURN, as Judge of the Circuit Court of Baldwin County, Alabama, in Equity.

I Div. 618.

Supreme Court of Alabama.

Aug. 20, 1970.

Chason, Stone & Chason, Bay Minette, for petitioners.

J. B. Blackburn, Bay Minette, McDermott & Slepian, Mobile, for respondent.

### PETITION FOR WRIT OF MANDAMUS

COLEMAN, Justice.

This is an original petition for writ of mandamus to the Honorable Telfair J. Mashburn, as Judge of the Circuit Court of Baldwin County, Alabama, In Equity, to require him to set aside an order granting a motion to strike petitioners' demand for a jury trial, in a cause in said court wherein petitioners are respondents.

We granted the rule nisi and the trial judge filed a demurrer and an answer. The demurrer is overruled and the answer is hereinafter mentioned.

This court has heretofore reviewed by mandamus the action of a trial court in granting a jury trial or in denying a motion to strike a demand for jury trial. Ex parte Hall, 255 Ala. 98, 50 So.2d 264; Ex parte Merchants Nat. Bank of Mobile, 257 Ala. 663, 60 So.2d 684; Ex parte Spence, 271 Ala. 151, 122 So.2d 594. ". . . . It has been the custom of this Court to grant such a mandamus for that purpose with respect to interlocutory orders and judgments of the court as to which an adequate remedy is not available on appeal. . . . ." Ex parte Merchants Nat. Bank of Mobile, supra, 257 Ala. at 664, 60 So.2d at 685. We consider mandamus appropriate for review in the instant case.

On June 24, 1968, Ray E. Loper Lumber Company, Inc., a corporation, herein sometimes referred to as Loper, filed its verified bill of complaint in the circuit court, in equity, against Choyce E. Windham, N. S. Whitman, N. S. Whitman, Jr., who are natural persons, and N. S. Whitman Timber Company, Inc., a corporation; all of whom are sometimes herein collectively referred to as respondents. In its bill of complaint, Loper avers as follows.

On April 8, 1964, and thereafter, Loper owned timber in Baldwin and Mobile Counties. On April 8, 1964, or during several months prior thereto and continuing there-

after, respondents conspired together to enter unlawfully on lands on which Loper's timber was situated and unlawfully to cut and remove said timber. After said date, respondents, " . . . . acting either individually or through their respective agents, servants or employees . . . .," unlawfully cut and removed from said lands timber belonging to Loper and sold the same and converted the proceeds to the use of respondents.

In 1964, on to wit: the 18th and 26th of February and the 3rd, 11th, 18th, and 25th of March and April 1st, the respondent corporation " . . . . caused to be executed . . . ." against funds deposited in its name in a Mobile bank seven checks in certain stated amounts, totaling $5,485.60, "each of said checks being attached to an invoice reflecting timber taken from and belonging to" Loper. None of the checks was delivered to Loper.

On April 8, 1964, or prior thereto, respondents conspired together to defraud Loper of said $5,485.60 and caused to be canceled all said checks " . . . . which had been executed payable to . . . ." Loper, and " . . . . subsequent to which on, to-wit: April 8, 1964 . . . ." the respondent corporation issued its check number 22221, payable to Cash . . . ." for $2,950.91, which check " . . . . bore the endorsement of N. S. Whitman . . . ."; and on April 9, 1964, the respondent corporation caused to be issued its check number 22224, payable to cash, for $66.09, to which "they" (?) attached a statement bearing the legend " 'Corrected Statement 4–8–64 (22221)'." The sum of checks 22221 and 22224 is fifty-five per cent of $5,485.60. None of the proceeds of these checks was "tendered" to Loper in payment for its timber.

During the period from April 8, 1964, to October 9, 1967, the respondent corporation issued certain checks, " . . . . payable to cash . . . .," drawn on its funds in the Mobile bank. The face amount of said checks was computed at fifty-five per cent of " . . . . Respon-

dents (') invoice price for Complainant's timber . . . .," the total sum of said checks being $66,224.38. "According to said invoices, . . . . " the respondent corporation retained forty-five per cent of said invoice price, or $54,183.58, in the corporate treasury.

From January 3, 1966, to September 9, 1967, the respondent corporation caused checks to be drawn on its funds in the Mobile bank. The face amount of these checks was computed at " . . . . the Respondent's (sic) invoice price for Complainant's timber of $4.00 and $5.00 per cord." The total sum of these checks was $28,059.32. The checks, or proceeds thereof, were never tendered or paid to Loper.

The total sum of the checks issued " . . . . to cash and to Taylor-Windham, a proprietorship, partnership or corporation whose correct designation or identity is unknown to Complainant . . . . in the two categories above described . . . . " was $94,283.70; none of which was tendered to Loper in payment "of its timber" as listed and priced in the invoices of the respondent corporation; and, if the $94,283.70 is added to the $54,183.58 retained by the respondent corporation, the total is $148,467.28, which, complainant Loper alleges, belonged to Loper and was unlawfully converted by respondents to their own use. A list of the checks allegedly totaling $94,283.70 is attached to the bill of complaint as Exhibit A. The exhibit shows that the payee was "Cash" on all the listed checks except five checks, in each of which the payee is shown as "Taylor-Windham." Approximately one hundred and eighteen checks are listed.

Loper alleges that the list of checks in Exhibit A was furnished to Loper by the respondent corporation and its managing officer, N. S. Whitman. Loper alleges that the respondent corporation and N. S. Whitman have refused to make available to Loper " . . . . all applicable records showing the amount of timber belonging to the Complainant which was wrong-

fully cut and removed by Respondents and which was sold by them and the proceeds converted to their own use, or to account for such timber or to make payment . . . . " to Loper.

Complainant avers that its timber which was unlawfully cut by respondents is of many "species, sizes, and locations," and its value depends on the use to which it may be put and its distance from its market.

Loper alleges, on information and belief, that if all "applicable records" of respondents are made available to complainant, the records will show that an additional amount of Loper's timber has been unlawfully cut and removed by respondents and that the cash proceeds, "unmeasured" by said list of checks, have been received by respondents and converted to their own use. Loper further alleges that the records

will show that Loper's timber, cut by respondents, was not all sold in its most profitable market and that the prices shown on respondents' records do not properly reflect price differentials that would inure to Loper's benefit, " . . . . because of which discovery is necessary to enable Complainant to show the true value . . . . " of its timber which respondents have cut and sold.

Complainant offers to do equity and " . . . . avers there is a justiciable controversy between it and the Respondents."

Complainant prays for preliminary hearing " . . . . on that aspect of this Bill . . . . seeking discovery and accounting . . . . " and for decree on such hearing to require respondents to produce all pertinent records and for an accounting.[1]

1. Loper's prayer for relief recites:
"PRAYER FOR RELIEF
"WHEREFORE, THE PREMISES CONSIDERED, your Complainant prays that this Honorable Court set this cause down for a preliminary hearing on that aspect of this Bill of Complaint seeking discovery and accounting and upon such preliminary hearing will make or render a decree requiring the Respondents to produce all books, records, checks, invoices, ledger sheets, and all other evidence relating to timber belonging to your Complainant which was cut, removed or purchased by the Respondents during the hereinbefore mentioned periods of time; that an accounting be had under the direction of this Honorable Court to determine the exact amount of timber belonging to the Complainant which has been unlawfully cut, removed and sold by Respondents, including but not limited to, the date hauled, the point of origin, the point of destination, quantities, species, prices received, cost of cutting, cost of hauling, names of persons, firms or corporations to whom sold, producing all books of record, invoices, delivery tickets, settlement sheets, canceled checks and all other data connected with or required by Complainants in order to establish or verify the total amount due Complainant by Respondents for timber belonging to your Complainant unlawfully cut and removed by Respondents.

"That such orders, temporary and permanent, be issued and decrees rendered by this Court as may be necessary and proper to force Respondents to comply with such decrees issued by this Court with regard to the production of records for the purpose of a proper accounting, said records to be made available to and accessible to such person or persons as might be appointed by this Court to audit or inspect the same.
"That upon a final hearing of this cause, the Court will make or render a decree awarding the Complainant the sum of ONE HUNDRED FORTY EIGHT THOUSAND FOUR HUNDRED SIXTY SEVEN AND 28/100 ($148,-467.28) DOLLARS and the further sum which the Court may find to which the Complainant is entitled to recover as compensatory damages and, in addition, to fix the sum of money which Complainant is entitled to recover for interest on its withheld sales proceeds, and for the profit it has been denied by the abridgement of a natural resource basic to its profitable operations, and for the profit it has been denied by having its timber sold without regard to its proper use and most profitable market; and further, Complainant prays for TWO HUNDRED FIFTY THOUSAND AND NO/100 ($250,000.00) DOLLARS punitive damages.
"Your Complainant prays for such other, further or different relief as it may, in equity in good conscience, be entitled."

Complainant prays for decree on final hearing awarding complainant $148,467.28 and such additional sum as may be due complainant as compensatory damages and for interest and loss of profits, and further for $250,000.00 punitive damages, and for general relief.

Within thirty days after service of process, respondents N. S. Whitman, N. S. Whitman, Jr., and the respondent corporation filed a demurrer to the bill and, by endorsement on the demurrer, demanded a trial of this cause by jury.

Loper subsequently filed a motion to strike the demand for a jury trial. The trial court granted the motion and struck the jury demand.

Respondents N. S. Whitman, N. S. Whitman, Jr., and N. S. Whitman Timber Company, Inc., a corporation, applied to this court for alternative writ of mandamus to require the trial judge to set aside the order granting the motion to strike respondents' demand for a jury or to show cause why he should not do so. We granted the alternative writ.

The trial judge filed a demurrer to the petition for mandamus and an answer to the alternative writ. In the answer, he admits the averments of the petition that a bill in equity was filed by Loper as above set out, that respondents filed demurrer and jury demand, that Loper filed motion to strike respondents' jury demand, and that the trial court granted the motion to strike.

In his answer, the trial judge draws the conclusion that the bill presents a case for accounting and discovery, that the case is not a case in equity wherein a party is entitled to a trial by jury as a matter of right, and that the trial court, in exercise of discretion, granted Loper's motion to strike respondents' demand for a jury because respondents are not entitled to a trial by jury in this case.

The respondents, petitioners for mandamus, appear to concede that they are not entitled to a jury trial, as a matter of right, if the averments of the bill of complaint show that Loper is entitled to relief in equity on a recognized equitable ground.

Respondents contend, however, that the averments of the bill show that Loper seeks only a money judgment for torts allegedly committed by respondents and that the averments of the bill do not show that Loper is entitled to relief in equity.

In brief filed on behalf of the trial judge, counsel say that the averments of the bill show that Loper is entitled to the equitable relief of accounting and discovery, that a bill for such relief comes within the original jurisdiction of equity, and, therefore, respondents are not entitled to a jury trial as a matter of right.

The question for decision then is whether the facts averred in the bill show that the complainant, Loper, is entitled to the equitable relief of accounting or discovery; or, in other words, whether the averments of facts contained in the bill show that it has independent equity as a bill for an accounting or as a bill for discovery.

■ Does the bill have equity as a bill for an accounting? The only relief claimed or asked for is money damages for trover and conversion allegedly committed by respondents. "The action of trover, or trover and conversion, lies to recover damages for the conversion by the defendant to his own use of specific personal property, in which, at the time of the conversion, the plaintiff had a general or special property, and of which he was in the actual possession, or to which he was entitled to the immediate possession." Shipman, Hand-Book of Common-Law Pleading, 2nd Ed., 1895, page 68.

"The bill discloses a legal claim sought to be enforced in this equity suit. Before equity will assume jurisdiction of such a claim, the bill must show that the accounts are mutual, or so difficult and complicated to adjust that relief at law is inadequate, or that a fiduciary relationship exists between the parties.

". . . . . . . . . . .

"Mutual accounts exist where there is reciprocity of dealing between the parties, and do not include accounts where the items are all on one side, Todd v. Todd, 15 Ala. 743; there must be debits and credits on both sides. Wilson v. Calvert, 18 Ala. 274. Each party must have a cause of action against the other, Covington v. Covington, 216 Ark. 549, 226 S.W.2d 557; Gresty v. Briggs, 127 Kan. 151, 272 P. 178, and where an account is all on one side, it does not have the character of a mutual account. Weadon v. First National Bank and Trust Co., 129 Conn. 541, 29 A.2d 779." Kirksey Motors, Inc. v. General Acceptance Corp., 276 Ala. 270, 272, 273, 161 So.2d 475, 476, 477.

In the bill filed by Loper, the claims are all on one side, in favor of Loper and against respondents. There is no mutuality of accounts. There is not the slightest showing of any fiduciary relation between the parties. The averments with respect to the checks allegedly drawn by respondents, if they show anything, show merely that respondents have not paid Loper for Loper's timber which respondents allegedly cut unlawfully and converted to their own use.

"To invoke equity jurisdiction for an accounting, a general averment of complication of accounts is insufficient. Beggs v. Edison Electric Illuminating Co., 96 Ala. 295, 11 So. 381. An account is not complicated merely because it involves a large number of items. Segrest v. Brown, 263 Ala. 342, 82 So.2d 432.

"There is no sufficient averment in the bill showing such a complication of the accounts as to render inadequate a legal remedy. This is requisite to the maintenance of the bill in its accounting aspect. Comer v. Birmingham News Co., 218 Ala. 360, 118 So. 806." Kirksey Motors, supra.

■ The instant bill filed by Loper has no equity in its accounting aspect which will support Loper's claim to relief in equity and justify denial of respondents' demand for a jury trial.

Does the bill have equity as a bill for discovery? In Pate v. Bruner, 243 Ala. 648, 11 So.2d 356, this court considered a bill which is remarkably similar to the instant bill in substantially all material respects. The opinion of this court states that the averments of the bill were that, during the years 1939 and 1940, respondent Pate and his agent, servants, and employees went upon complainant's land and cut and converted into lumber large quantities of timber, to wit: 705,000 board feet; that Pate converted same to his own use and sold the same for his own benefit. The opinion, in part, recites:

"While complainant has general information that the said C. A. Pate committed the trespass, wrongs and injuries herein complained of during the years 1939 and 1940, he has no actual and accurate knowledge as to when they were committed. He has no accurate knowledge or information as to the number of trees cut or the quality of lumber into which they were converted and sawn [sawed], nor does he have knowledge or information as 'o the price the said C. A. Pate received for the lumber sawn [sawed] from the timber when sold by him in its finished condition. Complainant is without accurate knowledge of the quantity of timber cut, the character of the lumber into which it was sawn [sawed] and converted and the number of feet in said lumber, the quantity and character of the lumber and value and price of the same received by him. 'Such information is peculiarly within the knowledge of the said C. A. Pate.' [Brackets supplied.]

"In aggravation of the damages claimed, the original bill alleges that the tortious taking and conversion of the timber was without complainant's knowledge or consent, and 'were willful and intentional on the part of the said C. A. Pate.' The bill prays for complete discovery as to the elements of the complainant's cause

of action and the amount of the damages." (243 Ala. at 649, 650, 11 So.2d at 357, 358)

Complainant amended his bill by alleging, on information and belief, that respondent Pate claimed that he cut and sold the timber under an agreement with a third party, C. C. Bruner, who was a joint owner with complainant but had no authority to sell complainant's interest in the timber.

This court held the bill to be without equity and reversed for error in overruling demurrer to the bill of complaint, and said:

". . . . Its (the bill's) sole purpose is to recover a money decree for the conversion of chattels,—timber and lumber. This is its only aspect, and the discovery prayed is a mere incident to support that aspect. (Par. Supplied)

"The complainant's right is predicated upon a common law tort, for which, ordinarily, an action at law affords a complete and adequate remedy, and on the trial of which the defendant is entitled to a trial of the issues by jury. (Citations Omitted)

". . . . . . . . . .

"Cases in which the moving party seeks to recover damages arising from breach of contract or the commission of a tort, not associated or connected with an independent equity, courts of equity will not intervene, but will leave him to his remedy at law. (Citations Omitted)

"The facts alleged in the bill do not bring the complainant's case within the class wherein confidential relations exist between the parties, from which a duty arises for an accounting inter sese . . . . (Citations Omitted)

"Nor do the allegations of the bill bring the complainant's case within the rule that equity will lend its aid in support of a complainant's common law right of action where he has used due diligence and exhausted all reasonable effort to procure evidence in support

thereof, and failed, because the essential and material facts are within the exclusive keeping of the defendant and can be proved in no other way except 'by the defendant's answer.' (Citations Omitted)" (243 Ala. at 650, 651, 11 So.2d at 358)

To support the equity of the bill, counsel relies on two cases, the first being City of Mobile v. McCown Oil Co., 226 Ala. 688, 148 So. 402, wherein the City of Mobile filed a bill for an accounting and discovery to ascertain and collect from respondent a tax levied on sellers of gasoline within the corporate limits and police jurisdiction of the city during a period of time in which respondent had been engaged in such business. This court held that the bill had equity saying:

"The bill makes it perfectly plain and clear that all the facts with reference to the amount of gasoline sold by the respondent . . . . is wholly within the peculiar knowledge of the respondent; that without this information there is no legal way to calculate and fix the amount due by the respondent to the city . . . ." (226 Ala. at 692, 148 So. at 404)

In the instant case, for aught that appears, complainant could ascertain the amount and value of complainant's timber allegedly cut by respondents by a diligent inspection of the premises from which the timber had been taken.

The second case relied on is Lindsey Lumber Co. v. Mason, 165 Ala. 194, 51 So. 750. In that case, the complainant filed a bill to recover for money allegedly due from the respondent, Lindsey, for lumber which had been manufactured from timber by Canoe Mill Company, during a period of time in which a contract had been in force whereby Lindsey was to sell on commission the lumber manufactured by Canoe. In the statement of the case, the following appears, to wit:

". . . . It (the bill of complaint) further alleges that during the entire op-

**216**

eration of the original contract, as well as the extension, the Lindsey Lumber Company had the entire control and management of the sale of practically the entire output of the Canoe Mill Company and the collection of the purchase money, and that the Lindsey Lumber Company would collect same, and was supposed to deduct their commission and then account for the balance to the Canoe Mill Company. . . . . " (Par. Supplied) (165 Ala. at 195, 51 So. at 751)

In that situation, Lindsey was the only party with knowledge of the lumber sales and the money collected. This court held that Lindsey was the agent of Canoe and that necessity for discovery was shown, which seems obvious in view of Lindsey's complete control a.id management of the sales. It was not a case where recovery was sought for the unlawful cutting and conversion of plaintiff's timber by respondent or where the information sought could be obtained by diligent inspection of the premises.

On authority of Pate v. Bruner, supra, we are of opinion that Loper's bill of complaint is without equity and that respondents are entitled to trial by a jury, whose verdict will be binding as at law, and that the writ of mandamus should issue unless the respondent judge, after being advised of this opinion, enters an order setting aside his order granting complainant's motion to strike respondents' demand for a jury trial and enters an order denying complainant's motion to strike.

This court has twice observed that the special relief by way of discovery here sought by Loper would be obtainable by the statutory system at law devised for that purpose. Wooten v. Wooten, 270 Ala. 191, 117 So.2d 192; Kirksey Motors, Inc. v. General Acceptance Corp., supra.

Writ awarded conditionally.

LIVINGSTON, C. J., and BLOODWORTH, MADDOX and McCALL, JJ., concur.