282 So.2d 256

**RAY E. LOPER LUMBER CO., INC., a corp.**

**v.**

**Choyce E. WINDHAM et al., etc.**

**SC 48.**

Supreme Court of Alabama.

Aug. 30, 1973.

J. B. Blackburn, and James R. Owen, Bay Minette, for appellant.

Wilters & Brantley, Bay Minette, for appellee Choyce E. Windham.

Chason, Stone & Chason, Bay Minette, for appellees N. S. Whitman, N. S. Whitman, Jr. and N. S. Whitman Timber Co., Inc.

COLEMAN, Justice.

Plaintiff appeals from judgment for defendants in action to recover payment for trees on land of plaintiff which defendants had allegedly cut and sold.

For prior connected case, see Whitman v. Mashburn, 286 Ala. 209, 238 So.2d 709.

Plaintiff is Ray E. Loper Lumber Company, Inc., a corporation. Defendants are Choyce E. Windham, N. S. Whitman, N. S. Whitman, Jr., and N. S. Whitman Timber Company, Inc., a corporation.

In count 1, plaintiff claims $148,467.28 for that the defendants entered into an agreement by which they would unlawfully enter on lands of plaintiff and cut and remove and convert the timber to use of defendants. Count 2 is for money had and received. Counts 3 and 4 are for trespass.

Defendants pleaded the general issue and special pleas.

As hereafter noted, the principal issue developed on the trial was whether defendants had paid plaintiff for the timber cut. The case was tried to a jury and verdict was for defendants. Plaintiff argues two assignments of error.

1.

In Assignment of Error 2, plaintiff asserts that the trial court erred in overruling plaintiff's demurrer to plea 2 filed by defendants N. S. Whitman, N. S. Whitman, Jr., and N. S. Whitman Timber Company, Inc. These three defendants will sometimes be referred to as the Whitmans or the Whitman defendants.

The substance of the controversy is summarized by plaintiff in its brief as follows:

"Briefly, the undisputed facts in this case are that the appellant, Loper, owned large tracts of timbered land in Mobile· County and Baldwin County, Alabama; that the defendant, Windham, cut and removed 26,694 cords of paperwood from lands belonging to the appellant during the period of time complained of in the complaint; that the total amount of all of the checks issued by the defendants, Whitman, and made payable to cash was $94,283.70 or 55% of the value of the said paperwood and that the value of the paperwood as shown by the records of the defendants, Whitmans, was $148,467.28.

"The question to be answered then, is whether or not the appellant, Loper, ever received payment for the timber or paperwood. . . ."

The Whitman defendants, among other pleas, filed plea 2 wherein they allege that they dealt with defendant Windham as the agent of plaintiff, that Windham was authorized to sell timber belonging to plaintiff and receive monies from the Whitmans in payment for the timber, and that the Whitmans paid to Windham as such agent all sums due plaintiff for the timber sold to the Whitmans.[1]

Plaintiff argues that plea 2 is defective and that demurrer of plaintiff to plea 2 should have been sustained. Plaintiff says in brief:

"The case of Waugaman vs. Skyline Country Club cited as Proposition of Law No. 1, 277 Ala. 495, 172 So.2d 381, holds that:

" 'When it is alleged that the agent did some primary act which he was duly authorized to do, and a secondary and distinct effect is imputed to such act, it is not sufficient to allege the authority of the agent to do the primary act merely, but the secondary effect must be charged directly upon the principal or it must be alleged that the agent was authorized to bind the principal as to the secondary effect.'

"The appellant's demurrer aptly pointed out this error in the appellees', Whitmans', amended plea 2 and the demurrer should have been sustained. Particularly, in paragraph numbered 8 of the demurrer, the appellant points out that no facts are alleged to show that the defendants, Whitmans, or any of them, ascertained or made any effort to ascertain from the plaintiff (appellant) the nature

---

1. Plea 2 recites:

"2. For further answer to Counts 1, 3 and 4 of the Complaint as last amended, the Defendants, N. S. Whitman, N. S. Whitman, Jr. and N. S. Whitman Timber Company, Inc., a corporation, say that at all times since April 8, 1964, or during the several months prior thereto and continuing thereafter, the Defendant, Choyce E. Windham, was the duly authorized agent, servant or employee of the Plaintiff, Ray E. Loper Lumber Company, Inc., a corporation, and as such duly authorized agent, servant or employee was authorized to sell timber belonging to the said Plaintiff and receive monies from the Defendant N. S. Whitman Timber Company, Inc., in payment thereof and that at all times pertinent hereto, the Defendants, N. S. Whitman, N. S. Whitman, Jr. and N. S. Whitman Timber Company, Inc., a corporation dealt with him as such. That the Defendant N. S. Whitman Timber Company, Inc., a corporation, paid to the Defendant Choyce E. Windham, as such duly authorized agent for Ray E. Loper Lumber Company, Inc., a corporation, acting within the line and scope of his employment as aforesaid, all sums due the Plaintiff for the timber sold to N. S. Whitman Timber Company, Inc., a corporation, by the Plaintiff acting by and through the said Choyce E. Windham as the duly authorized agent, servant or employee as aforesaid."

and extent of the authority of the alleged agent, Choyce E. Windham. . . ."

Plaintiff's argument appears to be that, although plea 2 is sufficient to show that Windham was authorized to sell timber owned by plaintiff, the plea is insufficient to show that Windham had authority to receive monies in payment for the timber sold. Stated differently, the argument appears to be that although the plea is sufficient to allege that Windham had authority, as plaintiff's agent, to sell the timber, which is regarded as the primary act, the plea is not sufficient to show that Windham had authority, as plaintiff's agent, to recieve money in payment for the timber which is to be regarded as the secondary act.

In *Waugaman,* plaintiff undertook to charge that a defendant corporation was liable for the act of one Croom, an agent of the corporation whereby the agent caused, aided, or participated in the wrongful and malicious expulsion of the plaintiff from a social club. The plaintiff alleged that the agent of the corporation, while acting within the line and scope of his authority as such, had sold a liability insurance policy of the defendant corporation to the social club. Plaintiff alleged further that Croom, "an agent, servant or employee of said" defendant corporation, while acting within the line and scope of his authority as such, caused, aided or participated in the wrongful and malicious expulsion of plaintiff from the club.

It was alleged that Croom was also a member of the governing board of the social club. The holding of this court was, in effect, that the allegations of the complaint, even though sufficient to show Croom's authority as agent for the defendant corporation in selling the insurance policy to the club, which was the primary act, the allegations were insufficient to show that Croom had authority to act as agent for the defendant corporation when, as a member of the governing board of the club, he allegedly participated in causing plaintiff's expulsion from the club, which was the secondary effect or act.

In plea 2 in the case at bar, the Whitman defendants allege that Windham ". . . was the duly authorized agent . . . of the Plaintiff . . . and as such duly authorized agent . . . *was authorized to sell timber belonging to the said Plaintiff and receive monies from the Defendant N. S. Whitman Timber Company, Inc., in payment thereof* and that at all times pertinent hereto, the Defendants (Whitmans) . . . dealt with him as such. That the Defendant N. S. Whitman Timber Company, Inc., . . . paid to the Defendant Choyce E. Whindham, as such duly authorized agent for (Plaintiff) . . . acting within the line and scope of his employment as aforesaid, all sums due the Plaintiff for the timber sold to N. S. Whitman Timber Company, Inc., . . . by the Plaintiff acting by and through the said . . . Windham as the duly authorized agent, servant or employee as aforesaid." (Emphasis Supplied)

■ In plea 2, the Whitman defendants plainly allege that Windham, as agent for plaintiff, ". . . was authorized to sell timber belonging to the said Plaintiff and receive monies from the Defendant . . . in payment thereof . . ." The authority to sell and the authority to receive monies are both "charged directly upon the principal" and it is alleged ". . . that the agent was authorized to bind the principal . . ." as to the effect of both acts. The allegations, that the agent had authority to sell and authority to receive payment, are made conjunctively and consecutively in the same sentence. It is difficult if not illogical to regard either authority as primary and the other authority as secondary. With respect to the manner in which the allegations showing the agent's authority to act for the principal are made, the two authorities are coordinate and equal. The grant of both authorities is charged directly upon the principal.

The rule followed in *Waugaman* has no application to plea 2.

In its argument quoted above, plaintiff refers to "paragraph numbered 8 of the demurrer." Ground 8 of the Whitmans' demurrer recites:

"8. No facts are alleged to show that the defendants Whitman, or any of them, ascertained or made any effort to ascertain from the plaintiff the nature and extent of the authority of the alleged agent, Choyce E. Windham."

Plaintiff, apparently in support of ground 8 of its demurrer, states Proposition of Law No. 4, which recites:

"PROPOSITION OF LAW NO. 4

"Generally, one dealing with a known agent is not authorized blindly to trust the agent's statements as to the extent of his powers, and such person must use reasonable diligence to ascertain whether the agent acts within the scope of his powers.

"Johnson vs. Shook and Fletcher Supply Company

245 Ala. 123; 16 So.2d 406"

Proposition 4 is a copy of Headnote 4 in the report of Johnson v. Shook & Fletcher, supra. Proposition 4 is sound, as a general proposition of law, and we know of no decision of this court to the contrary. It does not appear, however, that Proposition 4 is pertinent to the question whether plea 2 is sufficient when challenged by ground 8 of plaintiff's demurrer. In Johnson v. Shook & Fletcher, supra, the opinion contains a number of citations and quotations which pertain to the authority of agents, but it does not appear that the writer of the opinion was concerned with the sufficiency of pleading or the sustaining of a demurrer to a pleading. In the last paragraph of the opinion, the writer concludes as follows:

"There being no dispute in the evidence, the question of whether the alleged contract was a reasonable one or within the statute of fraud, was for the court, and we hold that the defendants were entitled to the affirmative charge, duly requested in writing, and which was given. The judgment of the circuit court is affirmed." (245 Ala. at 133, 16 So.2d at 415)

■■ While a third party dealing with an agent is held to be subject to the burden of ascertaining the extent of the powers of the agent, it seems that where the agent is, in fact, acting within the scope of the authority granted to him, the principal ought to be bound for the acts of the agent, whether the third party made any inquiry as to the extent of the agent's authority or not. The decision as to the principal's liability ought to rest and, so far as we are advised, does rest on the actual extent of the authority granted to the agent and not on the fact that the third party dealing with the agent made inquiry to ascertain the agent's authority. We are not cited to or aware of any decision or statute which holds that, because a third party made no inquiry to ascertain the extent of an agent's authority, the principal is not bound by acts of the agent which were done by him while he was acting within the line and scope of his authority as the principal's agent.

Plea 2 is not subject to demurrer for any reason argued by plaintiff and Assignment 2 is without merit.

### 2.

In Assignment of Error 7, plaintiff asserts that the trial court erred in overruling plaintiff's motion for new trial. Plaintiff argues that the verdict is against the great preponderance of the evidence. Plaintiff says in brief:

". . . As stated above, the only matters to consider are whether or not the defendants, Whitman, paid the plaintiff, Loper, for the timber and we feel that after consideration of all the evi-

dence in this case and after allowing all reasonable presumptions of the correctness of the verdict, the preponderance of the evidence is so decidedly against the verdict that the court will clearly be convinced that it was wrong and unjust and will reverse and remand this case for a new trial."

This court has consistently followed the rule stated as follows:

". . . When the presiding judge refuses to grant a new trial, the presumption in favor of the correctness of the verdict is thereby strengthened. He is selected because of his legal learning, sound judgment, and the confidence of the public in his impartiality, and the courage of his convictions of right and justice. He has heard and seen the witnesses testify, observed their tone and demeanor, and noticed their candor, or convenient failure of memory, to avoid impeachment, or for other improper purpose. The appellate court, possessing none of these aids and advantages, and receiving the evidence on paper only, is less qualified to determine what evidence is unworthy of belief, or what weight should be given to that which has been rejected by the jury, and may give undue weight to the testimony of some of the witnesses. . . .

". . .

"When there is no evidence to support the verdict, it is clearly the duty of the court to grant a new trial. No court, possessed of a proper sense of justice, and a due regard for a fair and impartial administration of the law, can afford to allow such a verdict to stand. But when there is evidence on both sides, or some evidence to support the verdict, it

should not be set aside, because it may not correspond with the opinion of the court as to the weight of the testimony, or because it is against the mere preponderance of the evidence. Comparing the analogous rules above stated, and the rules established by other appellate courts, we deduce therefrom, and lay down as rules for the guidance of this court, that the decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. . . ." Cobb v. Malone & Collins, 92 Ala. 630, 633, 634, 635, 9 So. 738, 739.

See: Smart v. Wambles, ¶[6], 271 Ala. 651, 127 So.2d 611; and many other cases cited in Alabama Digest, Appeal & Error, ☞ Numbers 930(1) and 1003.

As stated above, the question to be answered by the jury was whether plaintiff ever received payment for its timber. The evidence offered by plaintiff tended to show that plaintiff had not received payment in full. On the other hand, the evidence for the defendants tended to show that plaintiff had been paid in full for the timber cut by defendants. Under the rule of review stated above this court will not substitute its judgment for that of the jury and judge who saw and heard the witnesses testify. Assignment 7 is not sustained.

Affirmed.

All Justices concur.