This case concerns the question of the enforceability of a real estate sales contract that falls under the Statute of Frauds.
Anthony and Sheila Durham sued Frank and Angela Harbin for the breach of an alleged agreement to sell some land. Specifically, the plaintiffs alleged that Frank Harbin had agreed (at least orally) to convey a lot in a subdivision for $7,600.[1] Although the plaintiffs paid this money to the defendants, Harbin refused several requests to convey the lot, and there is no evidence that the Durhams ever took possession of it. In the subsequent suit by the Durhams for the breach of the alleged sales agreement, the Harbins defended the refusal to convey the property on the basis of the Statute of Frauds,Ala. Code (1975), § 8-9-2 (5), and the trial court granted a summary judgment in their favor.
On appeal, the plaintiffs do not deny that the defendants made out a prima facie case calling for the application of the Statute. Nor do they contend that the statutory part-performance exception applies in this case,[2] because it is undisputed that the *Page 210 
plaintiffs were never put into possession of the property. Instead, the plaintiffs argue that certain letters written by Angela Harbin to the plaintiffs satisfy the Statute's requirement of a writing, or, alternatively, that the defendants were estopped from asserting the defense due to their conduct, conduct that included an alleged judicial admission of the existence and substance of the contract. We reject both of these arguments, and we affirm the judgment of the trial court.
We note initially, however, that the standard that we apply in reviewing a summary judgment is the same standard as that applied by the trial court in ruling on the motion. See, e.g.,Kemp Motor Sales, Inc. v. Lawrenz, 505 So.2d 377 (Ala. 1987). Moreover, this standard, as applied to the defense of the Statute of Frauds, requires that:
 "even though [the] plaintiff may produce [evidence of] a genuine issue of material fact [on matters such as the terms or existence of a contract], if the other side makes out a prima facie case under a special plea of the affirmative defenses of the Statute of Frauds or the statute of limitations, it is incumbent upon the opposite party to come forward with at least a scintilla of proof that these defenses do not apply to him. Otherwise, summary judgment is appropriate."
Thompson v. Wilson, 474 So.2d 657, 660 (Ala. 1985). Accordingly, our task in this case is to determine whether, under the applicable law, a scintilla of evidence supports the plaintiffs' position.
In regard to the two letters written by Angela Harbin that the plaintiffs argue satisfy the Statute of Frauds, we hold that neither presents a scintilla of evidence to support the plaintiffs, because neither letter has been "subscribed by the party to be charged." Ala. Code (1975), § 8-9-2.
The first letter written to the plaintiffs was typed on a Harbin Construction Company letterhead and briefly recited some basic terms that approximate the deal the Durhams claimed was breached, that is, that money was paid for the purchase of the lot in dispute. Importantly, although Frank Harbin's name was typed at the foot of this letter, and space was provided above his name for his signature, Frank Harbin never actually signed this letter. In fact, it is undisputed that the letter was prepared, not by him, but by his wife, Angela Harbin, without his knowledge or consent.[3]
In light of these undisputed facts, this letter does not satisfy the "writing" requirement of the Statute of Frauds. The letter was not actually signed by the person to be charged (Frank Harbin), nor can either the typewritten notation of Harbin's name or the Harbin Construction Company letterhead suffice as Harbin's "signature" in this case. Although it is possible that such a notation or letterhead could, in some circumstances, suffice as a signature, particularly under the statute of frauds provision of the Uniform Commercial Code, see, e.g., Welch v. Mitchell, 351 So.2d 911 (Ala.Civ.App. 1977), such alternative inscriptions are sufficient as signatures only when the party makes the inscription "for the purpose of authenticating the writing as binding on him." Bunchv. Garner, 208 Ala. 271, 273, 94 So. 114, 116 (1922). Although the question of the intention to authenticate is a question of fact, 2 A. Corbin, Corbin on Contracts § 520, at 762-63 (1950), there is not a scintilla of evidence in this record to support a finding of such an *Page 211 
intention. Indeed, as noted previously, it is undisputed that Frank Harbin himself had no knowledge of the production of this document; that fact completely forecloses the possibility that he could have intended authentication by these "signatures." In addition, we would also note that it is the general rule that "where the face of the writing itself demonstrates that some further act of signing was intended, such as the leaving of a blank space, a signature in the body of the writing [in this case perhaps the letterhead or the typewritten name] is not binding." 4 S. Williston, Williston on Contracts, § 585, at 157 (Jaeger 3d ed. 1961); see Bunch v. Garner, supra; Restatement(Second) of Contracts § 134, illustration 1 (1981). Moreover, as we will show directly, any theory that Angela Harbin signed this document as Frank's agent is also foreclosed by the "writing" requirement of the Statute of Frauds. Therefore, the undisputed evidence in this case, both intrinsic (the blank space above the typewritten name) and extrinsic (Harbin's lack of knowledge or consent), affirmatively demonstrates that there is no genuine issue of material fact as to the sufficiency of this writing, and the trial court did not err in holding that this letter did not satisfy the Statute of Frauds.
Likewise, the second letter written to the plaintiffs is also insufficient under the Statute. This letter, also typewritten on a Harbin Construction Company letterhead, was signed not by Frank Harbin, but by his wife Angela. Moreover, it recites terms far different from those contained in the previous letter, and hence, terms far different from those the Durhams argue were the essence of their agreement with Frank Harbin. This second letter indicates that the prior agreement to sell the lot had been modified. According to this letter, the parties had agreed that the money was to be applied to a collateral sale of another piece of property, a sale not in dispute on this appeal, because of an inability to obtain sufficient financing for the collateral sale. The letter further indicates that most of the money paid over was applied to this collateral deal, and not to the sale of the lot. The letter also recites that the remaining balance of the fund was returned to the Durhams, and it is undisputed that they accepted this refund.
Although it is difficult to see how reliance on this second letter could advance the plaintiffs' case, the letter's terms having been undeniably complied with by the defendants and there being no apparent breach under these terms, we note that this letter also does not satisfy the Statute of Frauds. While it is true that this letter was signed, it was not signed by Frank Harbin, but by his wife Angela. Therefore, it too is insufficient under the Statute, because it was not signed by the party to be charged with the contract. Moreover, any argument that Angela signed as Frank's agent is also foreclosed by the evidence. "Again, the statute of frauds comes into play, requiring an agent acting for his principal in a matter within the statute of frauds to be `lawfully authorized in writing.'"Cammorata v. Woodruff, 445 So.2d 867, 872 (Ala. 1983) (quotingAla. Code (1975), § 8-9-2). No such written authorization conforming with the Statute of Frauds was produced by the plaintiffs, and the trial court, consequently, did not err in holding that this letter, like the previous one, failed to conform with the requirements of the Statute.
The plaintiffs also argue that the defendants are estopped from asserting the defense of the Statute of Frauds, relying on the totality of their conduct. This conduct includes the issuance of the letters noted previously, the alleged oral representations of Frank Harbin, some allegedly fraudulent behavior by the defendants, and a judicial admission that the defendants purportedly made regarding the contract. We reject this argument as well.
In the case of Darby v. Johnson, 477 So.2d 322 (Ala. 1985), after a careful analysis of Alabama law, Justice Shores set forth the authoritative summary of the applicable exceptions to the Statute of Frauds in cases of land sales contracts:
 "In summary then, the part performance exception is generally the only exception to the Statute of Frauds in regard *Page 212 
to oral contracts concerning real property. To withdraw an oral contract from the Statute, one must pay some or all of the purchase price and be put in possession of the land by the seller. However, the cases instruct us that equity may intervene, even though the part performance requirement is not met, when fraud operates from the beginning — that is, when the breaching party procured the land or purchase money with no intent to perform the oral agreement admitted to have been made. The cases further require that this fraud be clearly shown. Equity will not intervene when the party merely refuses to perform. To do so would render the Statute of Frauds a nullity in that the Statute is usually raised only when one of the parties breaches the oral argument. Also, to enforce an oral contract against a party merely because he or she admitted to its existence and substance, against his or her own interest, is likely to promote perjury. Instead of admitting to the contract, the breaching party would be tempted to deny the agreement in order to escape liability."
Id. at 326-27. In short, outside of those situations where the defense has been waived,[4] a plaintiff may rely only on the statutory part performance exception or on an exception based on the defendant's fraudulent conduct, a form of equitable estoppel. See Mazer v. Jackson Insurance Agency, 340 So.2d 770
(Ala. 1976) (discussing the doctrines of equitable and promissory estoppel). Moreover, the fraud required to make this showing must be "inherent fraud — that is, an intention not to perform operating from the inception of the transaction,"Darby, at 327, and a mere refusal to perform a promised act is insufficient evidence of such inherent fraud to allow equity's intervention, see Darby at 326. Cf. Russellville ProductionCredit Association v. Frost, 484 So.2d 1084 (Ala. 1986) (fraud case).
Thus, the plaintiffs' reliance on any judicial admission of the contract is misplaced. Outside of cases involving sales of goods governed by the Uniform Commercial Code, see Ala. Code
(1975), § 7-2-201 (3)(b), Darby v. Johnson squarely rejects an exception based on a judicial admission of the substance of a contract, at least in the context of land sales. Alabama thus adheres to the general rule that a defending party may admit in judicial proceedings the substance of a contract and nevertheless assert the Statute in defense. Although long subject to academic criticism, this is nevertheless the majority rule. The rule is based, as is stated in Darby, on the fear that the opposite rule "is likely to promote perjury." Id.
at 327. See generally Shedd, Statute of Frauds: JudicialAdmission Exception — Where Has It Gone? Is It Coming Back?, 6Whitt.L.Rev. 1 (1984).[5] *Page 213 
Similarly, to the extent that by invoking "estoppel" the defendants rely on the doctrine of promissory, rather than equitable, estoppel,[6] their argument is foreclosed by the implications of Darby and the clear holdings of our other cases. See, e.g., Hurst v. Thomas, 265 Ala. 398, 91 So.2d 692
(1956). Although allowing a plaintiff's reliance on nonfraudulent representations to abrogate the Statute of Frauds is a widespread phenomenon, see J. Calamari J. Perillo,Contracts § 19-48 (3d ed. 1987), Alabama has rejected this approach to date, and the plaintiffs make no compelling arguments based on statutory construction or public policy inviting our reconsideration of this position.
Finally, the plaintiffs have not made their case on the exceptions that, under Darby, are cognizable under Alabama law. The part performance exception is inapplicable, because the plaintiffs were never put into possession of the property, and our review of the record convinces us that there is no legally sufficient evidence in this case of inherent fraud. Indeed, the facts of this case are remarkably similar to those in Darby —
a real estate deal among friends — and, as in Darby, the record shows "not fraud, but an amicable agreement." Darby, 477 So.2d at 327. Accordingly, the defendants were not estopped or otherwise prevented from asserting the Statute in this case.
In reaching this decision, we are well aware that our case ofDean v. Myers, 466 So.2d 952 (Ala. 1985), decided some six months prior to Darby, contains some language indicating that either a judicial admission by a defendant or the full performance of the plaintiff's side of an oral bargain could estop a defendant from asserting the defense of the Statute of Frauds. Indeed, one federal court has recently cited Dean as standing for the proposition that a judicial admission could estop assertion of the defense. See Holley Equip. Co. v. CreditAlliance Corp., 821 F.2d 1531 (11th Cir. 1987) (applying Alabama law). Although there are some admitted ambiguities in the Dean language, the facts and reasoning of that case indicate that it should be read, in light of the generally well-settled law of Alabama and the subsequent decision inDarby, not as approving of a judicial admission or promissory estoppel[7] exception, but primarily as an equitable *Page 214 
estoppel or fraudulent conduct case, or alternatively, as a case where the defense was waived by bringing suit on the contract.
In any event, the careful analysis of Alabama law advanced inDarby controls over the possible inferences to be drawn from the passing references to these doctrines in Dean, and the plaintiffs' reliance on Dean is therefore misplaced.[8]
For the foregoing reasons, we affirm the judgment of the trial court in this case.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
[1] The evidence varies as to the exact figure agreed upon, but the amount of $7,600 appears to be the figure generally accepted by the parties as the amount in controversy.
[2] The applicable statutory language is as follows:
"§ 8-9-2. Certain agreements void unless in writing.
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
". . . .
 "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller. . . ."
Ala. Code (1975), § 8-9-2 (emphasis added).
[3] In fact, the undisputed evidence is that this letter was written by Harbin's wife at the request of the Durhams, and that Frank Harbin himself had no knowledge of its writing because he was so preoccupied with personal matters that he was ignoring his business affairs.
[4] "Waiver . . . is the voluntary and intentional surrender or relinquishment of a known right." Dominex, Inc. v. Key,456 So.2d 1047, 1058 (Ala. 1984). In the context of the Statute of Frauds, such a surrender of the defense may occur "by an affirmative act showing intention to affirm the contract,"Conway v. Andrews, 286 Ala. 28, 34, 236 So.2d 687, 692 (1970), as where the party who seeks to assert the defense has himself brought suit on the non-conforming document. Id.
Similarly, the Statute of Frauds is an affirmative defense and may be waived by a failure to assert it in accordance with Rule 8 (c), Ala.R.Civ.P. Hughes v. Wallace, 429 So.2d 981 (Ala. 1983).
[5] We are not wholly deaf to the strong arguments by the commentators favoring a judicial admission exception to the Statute, and, in a proper case, might be inclined to consider whether the legislative intent behind the Statute f Frauds favors such a construction. This case, however, is not the case in which to do so.
This is because we do not think that the defendants actually "admitted" to the contract in question. It is not enough to merely admit that a contract was made; rather, under the judicial admission exception, as we understand it, there must be some substantial compliance in essential terms between the contract sued upon and the "admitted" contract. See 2 A. Corbin, Corbin on Contracts § 319, at 152 (1950); cf. Ala. Code
(1975), § 7-2-102 (2)(b) (UCC provision limiting an "admitted" sales contract only to the precise quantity of goods actually admitted, regardless of quantity term plaintiff claims contract contained).
The alleged judicial admission in the instant case consisted of Frank Harbin's answers to interrogatories. These answers, however, read in full, only "admit" a contract similar to that outlined in the second letter discussed above. As noted previously, this contract is of a nature completely different from the one sued upon; hence, assuming that an answer to an interrogatory fits within the definition of a judicial admission in the first place, we do not think that the contract sued upon was sufficiently admitted by this document.
[6] Some distinctions between the two doctrines were discussed inMazer v. Jackson Ins. Agency, supra. Apparent from, though not emphasized in, that opinion, is the characteristic of promissory estoppel important for the purposes of this discussion — unlike equitable estoppel, reliance on amisrepresentation is not required. Instead, the doctrine of promissory estoppel may be based on nonfraudulent reliance-inducing promises. See, e.g., Cantrell v. City FederalSav. Loan Ass'n, 496 So.2d 746 (Ala. 1986) (quotingRestatement (Second) of Contracts § 90 (1) (1981)); E. Farnsworth, Contracts § 6.12, at 435-36 (1982).
[7] The possibility that Dean approves a promissory estoppel exception arises from language to the effect that
 "[t]his Court has held that while a contract within the Statute of Frauds may not be made effectual by estoppel merely because the promisee has acted on it and the promisor has not performed, acceptance of the benefits by the promisor may give rise to estoppel, particularly if the promisee has fully performed."
Dean v. Myers, 466 So.2d at 955. Thus, Dean suggests that, while, in general, promissory estoppel will not prevent a defense based on the Statute, reliance in the form of the promisee's full performance could estop the promisor's assertion of the defense.
This language, however, should be read in conjunction with the case cited for the stated proposition, Bethune v. City ofMountain Brook, 293 Ala. 89, 300 So.2d 350 (1974), appeal afterremand, 336 So.2d 148 (Ala. 1976). That case is not an estoppel case. Instead, Bethune stands for the well-settled proposition that relief will often be available to a plaintiff whose performance of his side of an oral bargain has conferred a benefit on the defendant. Such relief, however, is not based on abrogation of the Statute of Frauds and enforcement of the putative contract (a possible result under the doctrine of promissory estoppel), but on the remedy of restitution, which includes notions of quasi-contractual recovery. See E. Farnsworth, Contracts § 2.20 (1982). To prevent unjust enrichment, a plaintiff asserting the remedy of restitution is entitled to a return of the benefit conferred or "the reasonable value of the benefits which the [defendant] has accepted, used, and retained," Bethune, 293 Ala. at 94,300 So.2d at 353.
Thus, although Dean refers to "estoppel," it is clear that promissory estoppel was not intended by that language. Rather,Dean was referring to the settled right of a promisee who cannot enforce his oral contract to assert a restitutionary remedy. See generally E. Farnsworth, Contracts § 6.11 (1982) ("Even though the statute of frauds may prevent an injured party from enforcing the contract when the other party unjustifiably refuses to perform, courts generally allow the injured party restitution of any benefit he has conferred on the other party").
[8] Similarly, the cases of Dixieland Food Stores, Inc. v.Geddert, 505 So.2d 371 (Ala. 1987), and Merchants Nat'l Bank v.Steiner, 404 So.2d 14 (Ala. 1981), should not be read as approving a promissory estoppel exception to the Statute of Frauds. These two cases, instead of rejecting the doctrine outright, as has been the usual holding in Alabama, held instead that the doctrine was inapplicable in those cases because the proponents of the estoppel theory failed to establish the elements of promissory estoppel. Thus, these two cases could suggest that the doctrine might be adopted in a subsequent case where the elements of promissory estoppel were sufficiently established. In light of Darby and our other cases, such a reading is incorrect and should be avoided.