ON REHEARING EX MERO MOTU
On rehearing ex mero motu, the original opinion in this case is withdrawn, and the following opinion is substituted therefor:
This is an appeal by Alpine Bay Resorts, Inc., and Leisure American Resorts, Inc., from a judgment based on a jury verdict rendered against them in the amount of $25,000 for fraud and breach of contract. These claims arose out of an alleged agreement between the plaintiffs, Jeffrey and Janie Knutilla, and the defendants, by which the defendants were to repurchase the Knutillas' condominium timeshare unit for $1,776.46. The defendants filed motions for new trial and JNOV. Upon denial *Page 425 
of these motions, they appealed to this Court.
The record indicates a rather complicated series of facts, set forth in summary form here. Defendant Alpine Bay is a wholly-owned subsidiary of defendant Leisure American Resorts, Inc. Plaintiffs, Jeffrey and Janie Knutilla, purchased a condominium timeshare unit from Alpine Bay on August 4, 1983. On August 30, 1984, Mr. Knutilla contacted Alpine Bay to discuss the possibility of Alpine Bay's repurchasing the timeshare unit. Mr. Knutilla talked with Brenda Johnson, at Alpine Bay, who instructed him to send her a letter containing his request, which she said she would forward to theappropriate person.
In early September 1984, Mr. Knutilla received a letter from Alan Marlow, who described himself as "executive director" of Alpine Bay Resorts, in which Mr. Marlow offered to repurchase the Knutillas' timeshare unit and to reimburse them for the down payment and monthly payments made by them. On September 19, 1984, Sheryl Nelson, an employee of Alpine Bay, also sent the Knutillas a letter stating that Alpine Bay would repurchase the time-share unit for $839.68, upon return receipt of a proposed warranty deed that she had enclosed. After discovering a mathematical error, Ms. Nelson sent the Knutillas a second letter on September 27, 1984, confirming the corrected amount to be $1,716.46.[1]
The Knutillas executed and returned the deed to Alpine Bay on the same day they received the letter of correction from Ms. Nelson. On November 7, 1984, Ms. Nelson wrote Richard Stafford, a vice-president for both Alpine Bay and Leisure American, enclosing the deed and stating that a check for $1,716.46 was due Mr. Knutilla "per Alan Marlow." Also on November 7, 1984, Ms. Nelson sent the Knutillas a letter in which she stated that she had requested a check for them in the amount of $1,716.46 from Alpine Bay's Florence office. Sometime in early November, Mr. Stafford informed Mr. Knutilla that before making a decision concerning the repurchase of the timeshare unit, he would have to review the Knutillas' file. Finally, on December 6, 1984, Mr. Stafford sent the Knutillas a letter stating that he would be unable to accept the deed in exchange for a refund of payments, as had been agreed by Mr. Marlow and Ms. Nelson. Mr. Stafford made subsequent offers to the Knutillas, which were not accepted. The Knutillas made no further mortgage payments after September 1984, and on April 22, 1985, Alpine Bay foreclosed on the mortgage.[2]
Appellants present two primary issues: 1) Whether the trial court erred in denying the defendants' motions for JNOV on the fraud count, and 2) whether the trial court erred in denying the defendants' motions for JNOV on the breach of contract count.
Because we find the evidence insufficient to sustain either of the claims against Leisure American, that portion of the judgment relating to Leisure American is reversed and a judgment is rendered in its favor. However, we affirm the judgment in its entirety as it relates to Alpine Bay.
In testing the sufficiency of the evidence in support of both the contract claim and the fraud claim against Alpine Bay, we emphasize that the only two defendants against whom the plaintiffs asserted claims were Leisure American and AlpineBay; no individuals were named as defendants. Thus, because we reverse the judgment against Leisure American, the beginning point of our analysis focuses on the conduct, particularly theintent, of Alpine Bay, a corporate entity, as made known through the conduct of its agents, and not the intent of the individual agents themselves, who are not defendants. *Page 426 
 I. The Fraud Claim
The fraud claim against Alpine Bay may properly be analyzed as either an ordinary fraud case or a promissory fraud case. Because, however, the trial court's charge to the jury was limited to the promissory fraud issue, we will confine our discussion here to that issue.
It is axiomatic that a corporate employee's individual defense of lack of intent does not of itself end the inquiry with respect to the corporation's requisite intent to defraud. The corporation is acting as a legal entity and, if an individual corporate agent's conduct, though not fraudulent of itself, combines with the conduct of other corporate agents so as to amount to corporate fraud, the corporation may not escape liability simply by pointing to one innocent link in the chain. (See the discussion of Bolton Ford, infra.)
The elements of the tort of promissory fraud are: 1) a false representation; 2) of a material fact; 3) that is relied upon by the plaintiff; 4) such that he is damaged as a proximate result thereof; 5) the representation must have been made with a present intent to deceive; and 6) when the representation was made, the defendant intended not to perform in accordance with it. Selby v. Quartrol Corp., 514 So.2d 1294 (Ala. 1987); andCoastal Concrete Co. v. Patterson, 503 So.2d 824 (Ala. 1987).
Three other applicable basic principles simplify the analysis. Generally speaking, the existence and scope of an agency relationship is a question for the jury. Lawler MobileHomes, Inc. v. Tarver, 492 So.2d 297 (Ala. 1986); Shelby v.Zayre Corp., 474 So.2d 1069 (Ala. 1985); Adler v. Miller,218 Ala. 674, 120 So. 153 (1928). Moreover, a principal in liable for the acts of his agent if the acts done are within the scope of the agent's employment. Cordes v. Wooten, 476 So.2d 89 (Ala. 1985); Ray E. Loper Lumber Co v. Windham, 291 Ala. 428,282 So.2d 256 (1973); Sayers v. Boyles, 280 Ala. 153, 190 So.2d 707
(1966); and Regional Agric. Credit Corp. v. Hendley, 251 Ala. 261, 37 So.2d 97 (1948). And it is old learning that the misrepresentations of material facts made by an agent, which are made within the scope of the agent's authority, are imputable to the principal. Bolton Ford of Mobile, Inc. v.Little, 344 So.2d 1208 (Ala. 1977); Logan v. Chastang, 207 Ala. 52,91 So. 867 (1921). See, also, Cook v. Cook, 28 Ala. 660
(1856). Based on these principles, we hold that, even in the context of promissory fraud, the verdict in this case is sustainable.
Alpine Bay mistakenly sets forth the promissory fraud issue as whether there is sufficient evidence to support the finding that Mr. Marlow or Ms. Nelson, acting for Alpine Bay, intendedto deceive the Knutillas and intended not to perform the repurchase agreement at the time it was made. The correct question is whether Alpine Bay had the requisite intent to defraud the plaintiffs. Drawing on the legal principles recounted above, we find that the facts of this case are that Alpine Bay (through Mr. Marlow and Ms'. Nelson) promised to repurchase the timeshare unit from the plaintiffs; and the jury could reasonably infer from the evidence that, at the time of this promise, Alpine Bay knew (as Mr. Stafford's testimony demonstrates[3]) that it would not perform this agreement if the plaintiffs did not satisfy an undisclosed criterion: a declaration by Alpine Bay that the plaintiffs qualified as a "hardship case." Moreover, Alpine Bay's Brenda Johnson assured the plaintiffs that she would forward their request to the "appropriate person." *Page 427 
This issue was resolved by a unanimous Court in Bolton Fordof Mobile, Inc. v. Little, supra. In that case, a salesman who did not know that a car to be sold to the plaintiff had been previously wrecked represented to the plaintiff that it had not been wrecked. The plaintiff bought the car and later discovered that, in fact, it had been previously wrecked. This Court upheld a verdict, including punitive damages, on an intentional fraud count against the dealer. The Bolton Ford Court stated, "The evidence shows that several other agents of Bolton [Ford of Mobile, Inc.,] knew that the demonstrator had been in a wreck, and Bolton cannot escape liability merely because itssalesman was not informed of the true facts." Bolton Ford,344 So.2d at 1210. (Emphasis added.) In upholding the award of punitive damages, the Court held:
 "There is evidence in the instant case from which the jury could have concluded that Bolton Ford, knowing that it was not true, represented to the plaintiff that the automobile he purchased had not been in a wreck, and that such misrepresentation was made with intent to deceive the plaintiff."
Id., at 1210.
We perceive no reason why that analysis cannot apply in the promissory fraud context of this case. Both here and inBolton Ford, the corporation's left hand did not know what its right hand was doing. Just as traditional agency law mandated the result in Bolton Ford, it also dictates the identical result here. There was ample evidence from which the jury could have reasonably found that Alpine Bay made a misrepresentation of material fact at a time when it had no intent to perform.
 II. The Contract Claim
As stated above, the evidence of Alpine Bay's representations, through Mr. Marlow, Ms. Nelson, and Ms. Johnson, coupled with circumstances of Alpine Bay's failure to perform, was sufficient to sustain the jury's finding of fraud. In reliance on these representations, the plaintiffs forwarded the deed, and thus reconveyed the property, to Alpine Bay and expected payment for that property.
Alpine Bay contends that the plaintiffs' contract claim is barred, as a matter of law, by the application of the Statute of Frauds. We disagree. This is not a case in which the plaintiff bears the burden of proving circumstances that fall within an exception to the Statute of Frauds. Rather, because of the jury's finding of fraud in the inception of the contract of repurchase, the application of the Statute of Frauds is never invoked.
It is a well-established principle that equity will intervene and render the Statute of Frauds defense inapplicable in a contract action
 "even though the part performance requirement is not met, when fraud operates from the beginning — that is, when the breaching party procured the land . . . with no intent to perform the oral agreement admitted to have been made."
Darby v. Johnson, 477 So.2d 322, 326-27 (Ala. 1985).
"Moreover, the fraud required to make this showing must be 'inherent fraud — that is, an intention not to perform operating from the inception of the transaction.' " Durham v.Harbin, 530 So.2d 208, 212 (Ala. 1988) (quoting Darby, supra,477 So.2d at 327). Viewing the facts of this case in light of the legal principles announced in Darby and Durham, we hold that the contract claim was properly submitted to the jury and that the trial court's refusal to grant JNOV was entirely correct.[4]
In summary, by our analysis above and from the teachings ofBolton Ford, we hold that the jury was justified in its conclusion that Alpine Bay's fraudulent representations manifested "an intention not to *Page 428 
perform . . . from the inception of the transaction."Durham, 530 So.2d at 212; Darby, 477 So.2d at 327. At the very instant Mr. Marlow represented that Alpine Bay would repurchase the plaintiffs' time-share unit, and, again, at the very instant Ms. Nelson made the same representation, Alpine Bay knew, as Mr. Stafford's testimony indicates, that it reserved the right not to repurchase the property; thus, the jury could have reasonably inferred that Alpine Bay intended, from the inception of the agreement, to procure the reconveyance of the property and not to pay the agreed-upon consideration.
Therefore, because for the reasons stated above, the contract claim falls outside the scope of the Statute of Frauds, the further question whether the Statute of Frauds is applicable where, as here, the contract is executed, as opposed toexecutory, is moot and need not be discussed. Moreover, all of the terms of the subject contract have been fully performed on the part of the plaintiffs, and only the consideration therefor, which was agreed upon in writing by Alpine Bay, remains unpaid. See Fowler v. Oliver, 540 So.2d 54 (Ala. 1989); and Scott v. Southern Coach Body Co., 280 Ala. 670,197 So.2d 775 (1967).
After careful consideration of the remaining issues presented, we find no basis for reversal as to Alpine Bay.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED AS TO ALPINE BAY RESORTS, INC.; REVERSED AND JUDGMENT RENDERED AS TO LEISURE AMERICAN RESORTS, INC.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
[1] We recognize that an inconsistency exists between the contract amount of $1,776.46, as alleged in the plaintiffs' complaint, and the evidence adduced at trial that the contract amount was $1,716.46. However, no issue was made of these varying amounts; therefore, they are not material to this appeal.
[2] Alpine Bay counterclaimed below for a deficiency of $2,143.13 remaining on the debt after the foreclosure sale, but its failure to allege error on appeal concerning the jury's adverse finding on its counterclaim precludes our review of this matter.
[3] Mr. Stafford testified on cross-examination about Alpine Bay's policy of repurchasing time-share units in some circumstances as follows:
"Q. What was that policy?
 "A. To look at each individual case on the individual merits of the case.
"Q. And?
 "A. Make a determination of the hardships and the facts that were involved in the request for whatever relief."
The reasonable import of this testimony, viewed in its full context, is to the effect that Mr. Marlow and Ms. Nelson were authorized to enter into repurchase agreements and that Mr. Stafford reserved the right to reject any such "agreement" on a case-by-case basis, after the repurchase deed had been delivered.
[4] It is significant to note that the Durham and Darby principle (that fraud in the inception prevents the application of the Statute of Frauds) operates even in the context of an oral agreement to transfer. Here, the entire agreement to transfer was fully expressed in writing, i.e., via the several letters between Alpine Bay's agents and the plaintiffs. Thus, even assuming that the Statute of Frauds is invoked, the only issue raised by invoking the Statute would be whether Alpine Bay's agents were clothed with written authority to accept delivery of the repurchase deed. In this connection, it should also be noted that these are the same agents who effected the earlier transfer of the timeshare unit from Alpine Bay to the plaintiffs. Consequently, if the plaintiffs had elected to do so, they could have tried their contract on the theory that Alpine Bay was estopped to raise the Statute of Frauds defense. *Page 429 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 430 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 431 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 432