190 So.2d 707

**J. Ed. SAYERS**

v.

**William Douglas BOYLES.**

**1 Div. 340.**

Supreme Court of Alabama.

Oct. 6, 1966.

154

Vincent F. Kilborn, Mobile, for appellant.

Don Conway, Mobile, for appellee.

HARWOOD, Justice.

In the proceedings below the appellee, William Douglas Boyles, claimed damages resulting from an assault and battery committed on him by C. E. Molpus on 3 July 1964. J. Ed. Sayers was named as co-defendant, the complaint alleging that Molpus was acting within the line and scope of his authority as Sayers' agent at the time of the assault.

After a lengthy hearing, the court below, sitting without a jury, rendered a judgment against both defendants, and fixed the plaintiff's damages at $3,780.15 and costs.

This appeal is by Sayers alone. Molpus was served with notice of appeal, but has not joined in the appeal.

The appellant has argued two assignments of error. Both raise substantially the same issue, that is, whether the court erred in entering the judgment against Sayers because of the insufficiency of the evidence to establish that Molpus, at the time of the assault and battery, was the agent of Sayers, acting within the general

scope of his employment with a view to the furtherance of his master's business.

In the trial below the plaintiff introduced a lease for a house in Mobile which was owned by Sayers, who did business under the name of J. Ed. Sayers Companies. The first paragraph of the lease sets forth that the lease was made "between J. Ed. Sayers Companies, party of the first part, hereinafter called lessor, by C. E. Molpus Real Estate as agents of the lessor, and William D. Boyles and his wife Cornelia B. Boyles, party of the second part, hereinafter called the lessee." The lease was signed by the plaintiff, and by "C. E. Molpus, as Agents."

Other provisions of the lease pertinent to this review provided:

"The lessee agrees to pay to the lessor *or said agents at the office of said agents* the sum of $660.00 (Six Hundred and sixty and no/100 Dollars) payable as follows

"By 12 payments of Fifty-five ($55.00) each due and payable on the 1st day of November 1962, and on the first day of each month thereafter.

\* \* \* \* \* \*

"And the lessor reserves the right during this term to visit and inspect by himself *or agents,* said premises at any reasonable time." (Emphasis ours.)

It was also provided that if the lessee should continue to occupy the premises after the expiration of the lease, then at the option of the lessor the contract should continue in force and effect.

The plaintiff Boyles testified that during the life of the lease, he had paid the rent due either by money order payable to Sayers, or by cash paid at Sayers' office.

Boyles had gotten behind in his rent and about two weeks before the difficulty between himself and Molpus, he had gone to Mr. Sayers' office to discuss the rent arrearage. Mr. Sayers was busy and told him, " \* \* \* I've got these people hired to do this, you will have to talk to them. Says, you make your arrangements with these people that work for me." Boyles then saw Mrs. Dickson, a secretary or bookkeeper in Mr. Sayers' office, and told her that he would come down every pay day and pay some on the rent.

On 3 July 1964, Molpus came to Boyles' house inquiring for him. Boyles had not returned from work and Molpus left. Thereafter he drove back to the Boyles' house and "sat on the horn" until Boyles went out to see him. Then, according to Boyles:

"Well, he asked me wasn't I supposed to go down and pay the rent, pay some of my rent Friday afternoon. Said, wasn't that your agreement that you was to go down and pay some rent today? I said, I was going down this afternoon or either Monday. I said I am off all day Monday and I have to go to town anyway and I'll pay it when I am there Monday. Then he wanted to know how much I was going to pay. I told him I would pay as much as I could. He insisted that I pay a hundred dollars. I told him that I didn't draw a hundred dollars, much more than a hundred dollars. It was impossible for me to pay that much at that time. That I had told them at the office and I had told him that I would make payments each payday starting that payday until I got caught up in my rent. He said that wasn't satisfactory that I would have to pay that—that amount, a hundred dollars. I told him I couldn't."

Boyles further testified that Molpus left his car, struck him with his fist, knocking him down, and then kicked him, with resulting injuries and damages.

Boyles also testified that prior to 3 July 1964, Molpus had been to his home several times discussing the rent payments, and other testimony offered by the plaintiff was to the effect that Molpus had also been to the Boyles' house in connection with some trouble with the sewer, and he and

Mrs. Boyles had had words at this time.

Mr. Sayers was called as a witness by the plaintiff. On direct examination, Mr. Sayers testified that he had employed Molpus as a real estate broker to sell the house in question, and Molpus had leased the house to Boyles with an option to buy. During the time Boyles occupied the house, Molpus got a fee out of the rent involved; that Molpus did not work for him. However, Mr. Sayers further testified that he did not know whether Molpus had collected rent for him, that it was entirely possible he had, and if so, Molpus had paid it into his office through the office bookkeeper.

■■■ We think it clear that the lease contract constituted Molpus, as agent, to receive rent on the house in question from the plaintiff. Implicit in such agency authority to receive payment of the rent was the authority to contact Boyles relative to the payment of the rent. Such construction is reinforced in light of the principle that where a principal uses language in a written agency agreement which may mislead, the principal is bound by a construction of such language against him in determining the purpose of the agreement. Sadler v. Radcliff, 215 Ala. 499, 111 So. 231.

It appears to be Mr. Sayers' contention that Molpus was only a broker to sell the house. He may well have occupied such status. However, the lease was entered into through Molpus as agent of Sayers. The lease provided that rental payments were to be paid to Sayers, or to said agents (Molpus) at the office of said agents. Sayers or his agent was to have the right to inspect the premises at any reasonable time. The evidence shows that Molpus was the one who handled the matter of the sewerage trouble at the house.

Even though Molpus may have also occupied the status of a broker to sell the house, the lease itself tends to establish him also as an agent to collect the rent due on the house.

■■■ In determining whether the act of an agent occupying two positions of agency with different powers was authorized to do the questioned act, his conduct should be referred to that status which includes his authority to do the act, even though he may purport to act in the other capacity. Kiker v. Sovereign Camp W. O. W., 232 Ala. 151, 167 So. 313.

While Mr. Sayers testified that Molpus was employed by him only as a broker to sell the house, the written lease would strongly tend to establish Molpus' agency to collect the rent on the house. Further, it is impressive that after Boyles' visit to Sayers' office in which he conferred with Sayers' bookkeeper in reference to the payment of rent arrearages that Molpus should know that such arrangement had been made or discussed. If Molpus was not Sayers' agent to collect rent on the house, then how and why did he acquire knowledge of the said arrangement as to the payments to be made on the overdue rents?

■■■ In Regional Agricultural Credit Corp. v. Hendly, 251 Ala. 261, 37 So.2d 97, this court reiterated the well established doctrine that: "There is no doubt that the principal is liable for the acts of the agent done in the interest of and in the prosecution of the business of the principal, if acting within the scope of his employment."

We hold that under the evidence presented below, and the reasonable inferences to be drawn therefrom, the lower court was fully warranted in the decree entered, and certainly we find no basis justifying a conclusion by us that such decree is erroneous.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.