Glen L. WOOD, Plaintiff-Appellant,

v.

HOLIDAY INNS, INC., et al.,
Defendants-Appellees.

INTERSTATE INNS, INC., and Jessie
Goynes, Defendants-Appellants,

v.

GULF OIL CORPORATION,
Defendant-Appellee.

No. 74–1753.

United States Court of Appeals,
Fifth Circuit

Feb. 17, 1975.

Joseph D. Phelps, Albert P. Brewer, Montgomery, Ala., Thomas J. Gardner, III, Tupelo, Miss., for Wood.

Charles A. Tarter, Birmingham, Ala., Robert A. Huffaker, Montgomery, Ala., for Interstate Inns & Jessie Goynes.

William C. Woods, Jr., Robert D. Norman, Birmingham, Ala., for Holiday Inns.

W. F. Horsley, Opelika, Ala., for Gulf Oil Corp.

Before GODBOLD, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

After a jury verdict, the district court ordered, *inter alia*, a new trial for one of the several defendants below. At oral argument on this appeal we raised, *sua sponte*, the question of whether this court had jurisdiction to consider a decision which was not a final judgment as to all of the parties. *See* Wagner v. Burlington Industries, Inc., 423 F.2d 1319 (6th Cir. 1970).

Briefs were then submitted on the question of jurisdiction and the case was subsequently remanded for certification by the district court, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. *See* Turtle v. Institute for Resource Management, Inc., 154 U.S.App. D.C. 341, 475 F.2d 925 (1973); United States v. Crow, Pope and Land Enterprises, Inc., 474 F.2d 200 (5th Cir. 1973); Aetna Insurance Co. v. Newton, 398 F.2d 729 (3rd Cir. 1968). The district court having certified that "there is no just reason for delay," we proceed to the merits. *See* Kull v. Mid-America Pipeline Co., 476 F.2d 271 (5th Cir. 1973).

I.

Glen Wood, an executive vice president of SAR Manufacturing Company, checked into the Holiday Inn facility at Phenix City, Alabama, during the late afternoon of February 1, 1972. When Wood checked in, he tendered payment for his room by using his Gulf Oil Company credit card. An imprint was made of his card and it was returned to him as was the normal practice.

After Gulf issues a card it continues to evaluate a customer account and, if it concludes from available information that a customer cannot afford to pay, it cancels credit to that customer. In order to facilitate this process, Gulf furnishes to National Data Corporation a list of all credit cancellations. Under the system established by Gulf, Holiday Inns are authorized to contact National Data, which disperses undetailed credit information concerning Gulf credit cards upon inquiry by telephone from properly identified parties authorized to extend credit to Gulf card holders. The information is generally brief and consists of either an authorization or denial of credit.

Gulf maintained a file on Wood. In compiling its information Gulf had received a credit report on the plaintiff from a credit bureau in Tupelo, Mississippi. The report was incomplete in that it did not contain the plaintiff's annual income; in all other respects the credit report was favorable to the plaintiff.

The credit manager of Gulf testified that on January 17, 1972, sixteen days preceding the incident in question, he re-

viewed the credit file of Wood. Although the file was current at the time he reviewed it, he expressed concern about the increasing amounts which were being charged on the card in relation to Wood's monthly income and made the determination that Wood's card should be placed in the "derog" file. Apparently Wood had not informed Gulf that the credit card was used for business as well as personal expenses. Wood was not notified, but Gulf directed National Data to give the following reply to anyone seeking credit approval on Wood:

> Pick up travel card. Do not extend further credit. Send card to billing office for reward.

Sometime during the early morning of February 2, 1972, Jessie Goynes, the "night auditor" of the Phenix City Holiday Inn, called National Data in Atlanta on a toll-free number provided by Gulf in order to confirm the plaintiff's credit card number and receive an authorization to extend credit on the basis of the card. He received a communication from National Data advising him: "Do not honor this sale. Pick up the credit card and send it in for reward."

Wood testified that he was awakened about 5:00 a.m. by Goynes who told Wood that he, Goynes, needed the credit card for the purpose of making another imprint, since the imprint at the time of the registration was indistinct. Goynes came to appellant's room and took his card for the avowed purpose of securing the imprint and with the promise to return it in a few minutes. After 30 minutes Wood became concerned because his card had not been returned and was fearful that someone had taken it under a scheme to fraudulently secure it. Wood then dressed and went to the front desk of the motel where he was told by Goynes that the card was "seized upon the authority of National Data" and that cash payment was required. Goynes refused to call Gulf Oil at appellant's request. Wood then paid in cash and left the motel. Upon returning home Wood called Gulf and explained

that he used the card for business purposes. He complained that his account was current and his credit was immediately reinstated.

Goynes, however, stated that after getting the directive from National Data, he telephoned the plaintiff's room at 7:00 a.m., and advised him that he was unable to obtain credit authorization and requested plaintiff to surrender the card. Goynes said that Wood voluntarily complied.

At any rate, Wood's anger and frustration continued to build. Three days later, while he was relating the incident to a friend, he had a heart attack, precipitated apparently by the stress of the incidents surrounding the revocation of credit.

Wood sued the Gulf Oil Corporation, Holiday Inns, Inc., Interstate Inns, Inc. (the owner of the Phenix City Holiday Inn) and Jessie Goynes. Interstate and Goynes denied any negligence or wrongful conduct and asserted by way of cross-claim that they were acting under the direction of Gulf and were therefore entitled to indemnification by Gulf.

After trial, the jury returned a verdict in favor of Wood but apportioned damages in the amounts of $25,000 compensatory damages against Gulf, $25,000 punitive damages against Interstate and Goynes, and $10,000 punitive damages against Holiday Inns. The court then granted the motions of Gulf and Holiday Inns, Inc., for judgments notwithstanding the verdict and granted the motion of Interstate and Goynes for a new trial.

■ Wood appeals. Interstate and Goynes also appeal the district court's action in overturning the jury's verdict on the cross-claim in their favor through the granting of Gulf's motion for judgment notwithstanding the verdict. In evaluating the propriety of the trial court's entry of judgment notwithstanding the verdict, we consider all the evidence, but do so in a light most favorable to the party opposing the motion. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). "If the facts and inferences point so strongly and

overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict," granting a motion for judgment notwithstanding the verdict is proper. *Id.* But, "if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions," the motion should be denied. *Id.*

## II.

Wood's primary claim against Gulf is based upon the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t (1974). The Act charges "consumer reporting agencies" and users of "consumer credit reports" with various responsibilities. Failure to discharge these duties appropriately may give rise to civil liability. *See* 15 U.S.C. §§ 1681n, 1681o.

Wood alleged that Gulf negligently failed to comply with the provisions of the Fair Credit Reporting Act as both a consumer reporting agency and a user of a consumer report. Gulf argues that it was not a consumer reporting agency as defined in 15 U.S.C. § 1681a(f), and the district court so held, apparently as a matter of law.

The Act defines a consumer reporting agency as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . .. 15 U.S.C. § 1681a(f).

Gulf vigorously asserts that it falls outside the purview of this statute because no third party was furnished a report. In essence, Gulf contends, and the district court held, that the credit in this case was to be extended only by Gulf, not by Interstate. Hence, while Gulf did terminate Wood's credit vis-a-vis Gulf, it did not make a report advising Interstate as to whether to extend its own credit.

Much of the confusion in this case stems from the multifaceted position of the Phenix City facility, the recipient of Gulf's communication. The Phenix City Holiday Inn accepted the Gulf credit card and was therefore Gulf's representative in facilitating the extension of Gulf's credit. But the Phenix City facility also honored a number of major credit cards, and, in fact, nothing prevented the Phenix City Inn from extending credit on its own account.

■ The communication by Gulf to the Phenix City Inn was made to a separate business entity. However, the credit to be extended was Gulf's, and the Phenix City facility was merely acting as Gulf's representative in extending the credit. Hence, the communication was not "for the purpose of furnishing consumer reports to third parties." It was merely directed from Gulf to its local representative, made for the purpose of protecting Gulf rather than for the purpose of influencing the Phenix City Inn's own credit decision.

Wood next maintained that Gulf is liable under 15 U.S.C. § 1681m(a) as a user of a credit report. This section provides:

> Whenever credit or insurance for personal, family, or household purposes, or employment involving a consumer is denied or the charge for such credit or insurance is increased either wholly or partly because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

The district court held that there was no evidence that Wood was damaged by Gulf's failure to report the name and address of the reporting agency. Wood renews his argument on appeal, contending that if Gulf had informed him promptly of its decision to terminate his credit, the incident at the Holiday Inn would have been avoided.

Apparently, the only requirement placed upon a "user" of a credit report is the duty to disclose the name and address of the reporting agency when credit is denied. 15 U.S.C. § 1681m. There is no evidence that the actions of Goynes or the reaction of Wood would have been any different if Wood had been told at the time his credit card was withdrawn that Gulf held a favorable credit report from the Tupelo reporting agency.

We need not base our decision upon the timing of the notification, however, for there is no indication that Gulf relied upon this report in making its decision to revoke Wood's credit. Gulf certainly had a credit report in its possession, but there is uncontradicted testimony that this report played no part in Gulf's decision. Of course, the jury would normally be free to disregard the denials of a company holding a credit report that it used the report in evaluating a consumer.

Here, however, there was simply nothing in the consumer report which could have caused Gulf to terminate Wood's credit. Not only was all of the information contained in the report already in Gulf's possession, but the only inference that one could draw from the report was favorable to Wood. Indeed the condition which caused the termination of credit—Wood's monthly income in relation to the charges on his account—was in no way conveyed by the report. Hence, we feel that the district judge properly dismissed the cause of action based upon the "user" provision of the Fair Credit Reporting Act.

Wood's final theory of liability was based upon the notion that Goynes acted as Gulf's agent when he seized the credit card. The district court characterized Wood's complaint as an allegation that his injury had been caused by breach of the common law duty of the innkeeper to his guests. Since there was no evidence that Gulf had acted as an innkeeper in this case, the lower court absolved Gulf of any liability. Alternatively, the judge held that there was no substantial evidence that Goynes acted as the agent of Gulf when he seized the card.

■ Wood stipulated at the pre-trial hearing of October 4, 1973, that one of his allegations was based upon the breach of the innkeeper's duty. However, the pre-trial order indicates Wood also averred that he was subjected to "offensive, abusive and insulting conduct, action and language" by Goynes and that Gulf's liability is predicated "upon the actions of Jessie Goynes, if Goynes is determined to be the agent of Gulf Oil." Therefore, we do not believe that Wood's allegation against Gulf was based upon breach of the innkeeper's duty. Rather, we believe that Wood's alleged cause of action sounds in tort, at least as against Gulf,[1] and it is therefore appropriate to consider the question of the agency relationship between Goynes and Gulf.

None of the parties in this case has presented a very enlightening discussion of the alleged principals' liability for Goynes' actions. This is at least partly attributable to the opaque state of agency law in Alabama.

Numerous tests have been set forth in Alabama cases to aid in determining the question of agency. These tests furnish assistance, but no definite conclusions, since they are always enunciated within the context of a particular factual setting. Ridgeway v. Sullivan-Long & Hagerty, Inc., 39 Ala.App. 341, 98 So.2d 665, 667 (Ala.App.1967). "Control" is a factor most often mentioned. *Id.* A principal-agent relationship is said to exist if the alleged principal reserves the right of control over the conduct and activities of the purported agent. Alabama Power Company v. Bodine, 213 Ala. 627, 105 So. 869 (1925). The distinction between "authoritative direction and control," on one hand, and "mere suggestions as to detail," on the other, is an important one. Tuscaloosa Veneer

1. We also note that the legal rights of the plaintiff are to be determined by the law and the facts as established in the case and not by the language asserting the claim. *See* 2A J.W. Moore, Federal Practice, § 8.14 and cases cited therein.

Co. v. Martin, 233 Ala. 567, 172 So. 608 (1937).

■ The cases to which the parties have cited us invariably refer to a master-servant relationship, although the opinions are couched in "principal-agent" terms. A master is a species of a principal and a servant is a species of an agent. Restatement (Second) of Agency § 2, comment (a) (1958). Ordinarily, a principal is not liable for physical harm caused by the negligent conduct of a non-servant agent during the performance of the principal's business, if the latter neither intended nor authorized the result nor the manner of performance. Restatement (Second) of Agency § 250 (1958). "It is only when to the relation of principal and agent there is added that right to control the physical details as to the manner of performance which is characteristic of the relation of master and servant that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor." *Id.* In order to ascertain the extent of the principal's liability for his agent's tortious acts, we will therefore assume the correct test is whether the alleged principal had the right to control the physical details of the manner of the alleged agent's performance.[2]

■ The existence and scope of a principal-agent relationship is generally for the jury to determine, Riley v. Ford Motor Co., 442 F.2d 670, 672 (5th Cir. 1971); Treadwell Ford, Inc. v. Wallace, 49 Ala.App. 308, 271 So.2d 505 (1973), and the burden of proving agency rests upon the party asserting its existence, Johnson v. Shenandoah Life Insurance Co., 291 Ala. 389, 281 So.2d 636, 640 (1973).

The relationship between Interstate and Goynes is a source of confusion in this case. Not only are both of these parties represented by the same attorney, but the other litigants in the case have consistently treated Interstate and Goynes as a single party, combined, for purposes of reference, under the rubric "Innkeeper." It is conceded by all parties that Goynes acted as the agent and servant of Interstate; Gulf and Holiday Inns, Inc. deny a principal-agent relationship with Interstate. However, the culpability of Gulf and that of Holiday Inns, Inc., as principals is based upon the relationship between Goynes and each of the companies as well as the companies' positions vis-a-vis Interstate.

Gulf has argued throughout this appeal that when a local Holiday Inn extends credit on Gulf's credit card, it is extending Gulf's credit rather than its own. Indeed, the Gulf credit system allows the local Holiday Inn to extend up to $150 of Gulf's credit without even contacting a "higher authority" for certification. Moreover, Gulf's agreement with National Data provided that the latter was to supply credit information upon request to "dealers, employees, and agents" of Gulf. At trial Gulf acknowledged that these categories included the Phenix City Holiday Inn. In light of these facts, it would not seem unreasonable for a jury to conclude that the Phenix City Inn was Gulf's agent for the extension of Gulf's credit and the revocation of Gulf credit cards.

■ Indeed, we believe a jury could have reasonably concluded that Interstate was Gulf's servant in that Gulf controlled the manner in which Interstate rendered the service of extending credit or revoking credit cards. *Cf.* Restatement (Second) of Agency § 220 (1958). Although Gulf would have us believe that its vast credit network operated virtually without supervision, the

---

2. This rule appears to be the law in Alabama. *See* General Exchange Insurance Corp. v. Findlay, 219 Ala. 193, 121 So. 710 (1929). However, at least one case holds that a principal is liable even for the tortious acts of his agent, if those acts are performed in the prosecution of the principal's business, and if the agent is acting within the scope of his employment. *See* Sayers v. Boyles, 280 Ala. 153, 190 So.2d 707 (Ala.1966). This case may be harmonized with the stricter test since it involved an employee whose physical acts, by definition, were subject to the control of his employer. *See* Alabama Power Co. v. Key, 224 Ala. 286, 140 So. 233 (1932).

record indicates that Gulf, in fact, exercised a great deal of control over its credit operations. By virtue of their respective agreements with Holiday Inns, Inc., all Holiday Inns were required to accept the Gulf credit card and to contract with Gulf for this purpose. Gulf sent out detailed instructions on the use of the credit system, and cancellation bulletins three times a month, both of which contained instructions as to the authority and procedure for obtaining dishonored credit cards. Finally, Gulf representatives monitor the Holiday Inns in their respective areas by actually visiting the facilities and providing them with instructions and information as to the use and acceptance of the Gulf card. In light of these facts, we believe the jury could fairly conclude that Gulf, and not Interstate, determined the manner in which Gulf's credit would be extended or refused. Hence, the status of Interstate vis-a-vis Gulf is a matter for the jury.

■■ If Gulf is to be held liable for the actions of Goynes, he must be found to have acted as its sub-agent or perhaps, sub-servant. Gulf certainly did not hire Goynes directly, nor did it control the hours of his employment. But Gulf's agreement with Interstate implicitly assumed that the latter, as a corporate identity, would hire servants to perform the day to day details required in extending Gulf's credit or revoking credit cards. As described by the Restatement of Agency, a sub-servant is one who is appointed by the servant to perform functions undertaken by the servant for the master and subject to control as to his physical conduct. Restatement (Second) of Agency § 5, Reporters Notes (1958). In such a situation, the sub-servant would have to be subject to control by the master as to his physical activities before the master would be liable for the sub-servant's tortious conduct. *Id.*

The district court focused almost entirely upon Goynes' seizure of Wood's credit card in evaluating the extent of Gulf's supervision and control over Goynes. But in the overall context of Gulf's credit network, Gulf's supervision over Goynes appears to be more detailed.

By virtue of his employment, as a servant of Interstate, Goynes' duties included the general supervision and management of the Phenix City facility at night. In this capacity, he presumably had authority to extend up to $150 of Gulf's credit, without even contacting anyone.

■ Goynes' activities in extending credit and obtaining dishonored credit cards obviously inured to Gulf's benefit. In fact, Goynes had obtained dishonored credit cards for Gulf in the past. When he seized Wood's card he acted on the information conveyed to him by Gulf through National Data and pursuant to the authority vested in him by Gulf. The record clearly reveals that Gulf provided Goynes, through Interstate, with instructions on the process for obtaining dishonored cards. Indeed, they specifically cautioned that force, intimidation, or process of law was not to be used in order to obtain a Gulf card. The law is clear that if an agent's act was incident to carrying out the duties assigned to him by his master, the master may be held liable, even though he did not authorize the agent's means, and also though the agent may have sought to accomplish the master's business in a manner contrary to the master's expressed instructions. Solimica of Gulf Coast, Inc. v. Braggs, 285 Ala. 396, 232 So.2d 638, 642 (1970). That Gulf controlled Goynes' activities to some degree is obvious. Whether there was sufficient control of his physical activities by Gulf to render the company liable is a jury question.

"[A] judgment notwithstanding the verdict should not be granted unless under the evidence, together with all inferences that can be reasonably drawn therefrom, there can be but one reasonable conclusion as to the proper judgment." Continental Insurance Co. of New York v. Sherman, 439 F.2d 1294, 1300 (5th Cir. 1971). We believe that the existence of contradictory yet reasonable inferences in the case before us renders the district court's judgment notwithstanding the verdict as to Gulf improper. However, only one of Wood's theories could properly result in Gulf's

liability. Since the jury's verdict could have been based on any of the theories we remand this aspect of the case for a new trial on the question of Goynes' status as a servant of Gulf.

### III.

■ Wood also asks us to review the district court's grant of a new trial to Interstate and Goynes. The lower court set aside the verdict against these defendants and granted a new trial because, *inter alia,* the form of the verdict indicated that the jury was obviously confused. It is settled law that a trial court's ruling on a motion for a new trial will not be reviewed in an appellate court in the absence of a clear abuse of discretion. Faircloth v. Lamb-Grays Harbor Co., Inc., 467 F.2d 685, 697 (5th Cir. 1972); United States v. 1160.96 Acres of Land, Etc., Holmes County, Mississippi, 432 F.2d 910, 915 (5th Cir. 1970); United States for the Use and Benefit of Weyerhauser Co. v. Bacon Construction Co., Inc., 430 F.2d 420, 423 (5th Cir. 1970); Armstrong v. Jones, 376 F.2d 345, 346 (5th Cir. 1967).

■ The grant of a new trial in this case was not an abuse of discretion, for the form of the verdict indicated confusion. For example, the jury awarded differing amounts of damages against Holiday Inns, Inc., and Interstate, in spite of the fact that the liability of both parties resulted proximately from the single act of Goynes. A plaintiff cannot ordinarily recover a judgment for different amounts against joint tortfeasors. Bull v. Albright, 254 Ala. 29, 47 So.2d 266 (1955).

■ Where verdicts in the same case are inconsistent on their faces indicating that the jury was confused, a new trial is certainly appropriate and may even be required. *See* Hopkins v. Coen, 431 F.2d 1055 (6th Cir. 1970). Therefore, we will not overturn the trial court's decision.

### IV.

Finally, Wood appeals the district court's conclusion that there was no sub-

stantial evidence upon which a jury could reasonably decide that Goynes was the agent of Holiday Inns, Inc. The district court based its conclusion upon the finding that Interstate and Goynes were not operating the business of Holiday Inns, Inc., that Holiday Inns, Inc., owned no interest in the Phenix City facility, that Holiday Inns, Inc., maintained only a franchise agreement with Interstate, and that Holiday Inns, Inc., had no right of control over Goynes when he obtained the credit card.

In reaching its determination that Goynes was not the agent of Holiday Inns, Inc., the district court focused almost exclusively on the relationship between Interstate and Holiday Inns, Inc. In assessing the extent of Holiday Inns, Inc.'s liability for Goynes' actions it is again appropriate to analyze Goynes' position in "sub-agency" terms. There is considerable evidence in the record indicating a high degree of control over Interstate by Holiday Inns, Inc. The license agreement between the two parties required Interstate to build and maintain the facility as specified by the parent company, and to observe strictly the "Rules of Operation" as promulgated by the Holiday Inns, Inc., board of directors. Interstate was also required to permit regular inspection of the Phenix City facility by Holiday Inn inspectors in order to insure compliance with the Rules of Operation. The agreement further provided that any substantial violation of its terms would give Holiday Inns, Inc., the right to cancel Interstate's license. It was implicit in the agreement that Interstate as a corporate entity would not maintain the Phenix City Inn, but would hire servants for this purpose.

■ We believe that this was sufficient evidence from which a jury could reasonably conclude that Holiday Inns, Inc., should be liable for Goynes' actions. However, we do not base our holding on the degree of control that Holiday Inns, Inc., maintained over Goynes. Rather we believe that Wood presented more than insubstantial evidence as to the lia-

bility of Holiday Inns, Inc., on a theory of apparent authority.[3]

An agency relationship may arise from acts and appearances which lead others to believe that such a relationship has been created. Busby v. Walker, 84 So.2d 304, 307 (La.App.1955). This concept of apparent authority is based upon manifestations by the alleged principal to third persons, and reasonable belief by those persons that the alleged agent is authorized to bind the principal. Gizzi v. Texaco, Inc., 437 F.2d 308, 309 (3rd Cir. 1970); Johnson v. Shenandoah Life Insurance Co., 281 So.2d 636, 640 (Ala., 1973). "The manifestations of the principal may be made directly to the third person, or may be made to the community, by signs or advertising." Gizzi v. Texaco, Inc., 437 F.2d 308, 309 (3rd Cir. 1970).

Questions of apparent authority are questions of fact, and are therefore for the jury to determine. System Investment Corp. v. Montview Acceptance Corp., 355 F.2d 463 (10th Cir. 1966); Frank Sullivan Co. v. Midwest Sheet Metal Works, 335 F.2d 33 (8th Cir. 1964); Lind v. Schenley Industries, Inc., 278 F.2d 79 (3rd Cir. 1960). The license agreement between Holiday Inns, Inc., and Interstate provided that the Phenix City facility should be constructed and operated so that it would be "readily recognizable by the public as part of the national system of 'Holiday Inns.'" In-

deed, the Phenix City facility was required to use the same service marks and trademarks, and exterior and interior decor as the Holiday Inns owned by the parent company. A jury could therefore reasonably conclude that the license agreement required the Phenix City facility to be of such an appearance that travelers would believe it was owned by Holiday Inns, Inc.

The gravamen of Wood's complaint against Holiday Inns, Inc., is based upon the breach of the innkeeper's common law duty to his guests. Although the innkeeper's duty was apparently delictual in origin, See Anon. [cited generally as The Innkeepers Case] Y.B. Eas. 42 Ed. III, f. 11, pl. 13 (1369), breach of this duty in Alabama appears to sound in contract.[4] When Wood contracted with the Phenix City Holiday Inn for lodging he contracted for proper treatment by the servants of the innkeeper. See Dixon v. Hotel Tutwiler Operating Co., 214 Ala. 396, 108 So. 26, 28 (1926). However, there is virtually no way Wood could have known that the servants in the Phenix City facility were servants of Interstate, not of Holiday Inns, Inc. Indeed, the manifestations that Holiday Inns, Inc., required Interstate to make could only have served to convince Wood that Jessie Goynes was a servant of the parent company.

We believe that reasonable men could differ regarding Wood's evidence of apparent authority[5] and that the is-

3. It is generally not necessary for a third party who is attempting to hold a principal liable to specify which type of authority is relied upon. See Lind v. Schenley Industries, Inc., 278 F.2d 79, 86 (3rd Cir. 1960).

4. "One of the things which a guest for hire at a public inn has the right to insist upon is respectful and decent treatment at the hands of the innkeeper and his servants. That is an essential part of the contract whether it is express or implied. This right of the guest necessarily implies an obligation on the part of the innkeeper that neither he nor his servants will abuse or insult the guests, or indulge in any conduct or speech that may unnecessarily bring upon him physical discomfort or distress of mind." Dixon v. Hotel Tutwiler Operating Co., 214 Ala. 396, 108 So. 26, 28 (1926) quoting De Wolf v. Ford, 193

N.Y. 397, 403, 86 N.E. 527 (1908). See also James v. Governor's House, Inc., 284 Ala. 404, 225 So.2d 815, 819 (1969); Florence Hotel Company v. Bumpas, 194 Ala. 69, 69 So. 566 (1915).

5. In Miller v. Sinclair Refining Co., 268 F.2d 114 (5th Cir. 1959), the plaintiff, a patron of a Sinclair service station, was severely burned when a car driven by another customer skidded on gravel within the perimeter of the station, struck a gas pump, and caused a fire. Relying upon Florida law, this court held that there was no evidence in the record indicating any reliance by the plaintiff, in his decision to patronize the station, on the advertising or trademark of Sinclair. The court therefore rejected plaintiff's theory of apparent authority and affirmed the grant of summary judgment to Sinclair.

sue should therefore be determined by the jury. *Cf.* Gizzi v. Texaco, Inc., 437 F.2d 308 (3rd Cir. 1970). The district court charged the jury below that the relationship of agency between Goynes and Holiday Inns, Inc., could be implied if the jury found that Holiday Inns, Inc., through its advertising and control, held out to the general public that Interstate Inns in Phenix City, Alabama, was its agent. On the basis of these instructions, the jury held Holiday Inns, Inc., liable for Goynes' actions. However, the jury manifested its confusion as to the proper application of law to the facts by holding Holiday Inns, Inc., liable in an amount different from that of Interstate Inns, although the liability of both alleged principals was based upon the same act. Rather than merely reinstating the jury's verdict, then, we believe the interests of justice would be better served by remanding Wood's action against Holiday Inns, Inc., to the district court for retrial.

## V.

Cross-appellants Interstate and Goynes appeal the lower court's decision denying indemnification. We believe the district court was correct.

 Under Alabama law, an agent is entitled to indemnification for any amounts he has been required to pay for his principal in the performance of his agency. *See, e. g.,* Lauderdale v. Peace Baptist Church of Birmingham, 246 Ala. 178, 19 So.2d 538 (1944). However, the principal is not required to indemnify the agent for harm resulting solely from the agent's negligence. Continental Insurance Co. of New York v.

At trial in this case Wood said that he normally stayed at Holiday Inn facilities, but the court did not permit him to explain his reasons for doing so. Since Holiday Inns,

Sherman, 439 F.2d 1294, 1299 (5th Cir. 1971). Hence, in the absence of agreements to the contrary, an agent has no right to indemnity for damages suffered by reason of his own fraud, misconduct or other tort, even if the *wrong was* committed within the scope of the agent's employment. *See* American Automobile Insurance Co. v. Penn Mutual Indemnity Co., 161 F.2d 62 (3rd Cir. 1947).

 Goynes and Interstate have introduced no substantial evidence upon which a reasonable jury could conclude that Gulf was negligent. The only relevant action undertaken by Gulf was its directive to pick up Wood's credit card. However, by virtue of a statement contained on the card, and in the credit card application signed by Wood, Gulf retained the contractual right to revoke the credit card without notice. Hence, Gulf's decision to terminate Wood's credit was not tortious, and Goynes and Interstate have shown no duty which Gulf is alleged to have breached.

The theory of Wood's case is based upon the harm he is alleged to have suffered because of the manner in which his card was revoked. Any harm to Wood must have resulted solely from the actions of Goynes, since Gulf has not been shown to have been negligent. We therefore believe no substantial evidence has been presented which would justify the indemnification of Goynes and Interstate.

For the reasons set forth above, we affirm in part, reverse in part, and remand for proceedings not inconsistent with this opinion.

Inc.'s liability may be based upon apparent authority, Wood should be allowed to explain his reasons at retrial.