871 F.2d 112
 Jonathan MOSS, Jr., Melanie Moss, Jonathan Moss, Sr., and
Rever Juanita Moss, Plaintiffs-Appellees,
v.
The CITY OF COLORADO SPRINGS, a municipal corporation,
Michael Marsac, individually and as a police officer of the
Colorado Springs Police Department, Guy Grace, individually
and as a police officer of the Colorado Springs Police
Department, and Cecil Hutcheson, individually and as a
police officer of the Colorado Springs Police Department,
Defendants-Appellants.
 No. 86-1913.
 United States Court of Appeals,
Tenth Circuit.
 March 28, 1989.
Rehearing Denied April 20, 1989.
 
 William F. Eggert of Hall & Evans (Alan Epstein, with him on the brief), Denver, Colo., for defendants-appellants.
 Kenneth H. Stern of Stern & Elkind, Denver, Colo. (Jeffrey A. Goldstein, Denver, Colo., and Cuba Holloway of Bennett & Holloway, Colorado Springs, Colo., with him on the brief), for plaintiffs-appellees.
 Before ANDERSON, SETH and BRORBY, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 The plaintiffs, four residents of Colorado Springs, Colorado, sought damages under 42 U.S.C. Sec. 1983 against the City of Colorado Springs and three of its police officers. They alleged violations of their Fourth Amendment rights against the unreasonable execution of a search warrant and against the use of excessive force. They also brought various pendent state claims including claims alleging that defendants were negligent.
 
 
 2
 The Colorado Springs Police Department obtained a "no knock if necessary" warrant to search the plaintiffs' home during the course of an investigation of Kenneth Moss, a non-party resident of the house, for a February 17 robbery.
 
 
 3
 The four plaintiffs, Jonathan Moss, Sr., his wife Rever, Jonathan Moss, Jr., and his wife Melanie, were in no way connected with this investigation of the young Moss. On the night the warrant was executed at about 10:50 p.m., February 29, the four plaintiffs were at home. Kenneth Moss, the subject of the investigation, was not. That night, plaintiff Jonathan Moss, Jr., a former marine, went into his bedroom to get his .44 Magnum pistol. After he showed the weapon to his wife, who was worried about a recent series of neighborhood burglaries, he placed the pistol in its holster and was returning it to his bedroom when he saw and heard the front door being knocked down. No warning shouts were heard. Jonathan Moss, Jr., thinking that they were being robbed or that someone was seeking revenge for a previous incident, fired two shots with the pistol as the door burst open. It was the City SWAT team which had broken down the door with sledgehammers. They were dressed in dark fatigues and baseball caps. The evidence was in some dispute as to whether the officers had identified themselves. One officer said he heard none and no one in the house heard anything before the door was broken down. The wife of Moss, Jr. called the police on the 911 number.
 
 
 4
 The SWAT team began to fire after Moss, Jr. had fired his pistol and wounded a police officer. Moss, Jr. was severely injured by shotgun fire. The police also fired at Moss, Sr. who was armed. Some 22 shots were fired into the house by the police including three or four rounds from a shotgun. Rever Moss, Melanie Moss, and the child were not shot or otherwise injured.
 
 
 5
 The officer in charge testified that he did not know that Jonathan Moss, Jr., his wife and child lived at the house. There had been no surveillance of the house. There had been a "drive-by" by officers who reported they had seen an older man and a woman standing in the door and thought there was a party. The suspect Kenneth Moss was well known to the police and an officer testified he would see and talk to him on a daily basis. On the day of the incident this officer had talked to the suspect three times. The officer testified there was no hostility and in fact gave him a ride. He had no reason to think that the suspect was armed or anything but cooperative. This information was given to the officer in charge not long before the raid. A last minute attempt was made to find the suspect where he often was but this was not successful. The warrant was considered to be a "no knock if necessary" warrant. The SWAT team apparently took over the "if necessary" decision as to the entry from the officer who had obtained the warrant and who had the knowledge of the contacts with the suspect that day and the days before.
 
 
 6
 At trial, the two constitutional claims were submitted to the jury. It returned a verdict against the City and in favor of each plaintiff on the "Unreasonable Execution of a Search Warrant" claim, but found in favor of the three police officers on the same claim. The jury found for all the defendants on the constitutional "Excessive Force" claim.
 
 
 7
 The claims for negligence were submitted to the jury, which returned a verdict against the three police officers and in favor of Moss, Jr. It also returned a verdict on the negligence claim against the City, but not the officers, in favor of Moss, Sr., for injuries suffered while he was in police custody following the incident. It found against Melanie Moss on her claim for loss of consortium. The defendants appeal each of the verdicts returned in favor of the plaintiffs.
 
 
 8
 Among the issues raised on appeal, many for the first time, we reach only the defendants' argument that the verdicts returned by the jury are inconsistent. We agree that the jury's verdicts do contain inconsistencies. As mentioned, the parties raise important related legal issues on appeal that were not raised before the trial court. These issues impact on the inconsistencies in the verdicts and it is not possible to harmonize the verdicts. Instead, we must remand the case to the trial court for retrial. See Cheney v. Moler, 285 F.2d 116, 118 (10th Cir.1960); see also Malley-Duff & Associates v. Crown Life Ins. Co., 734 F.2d 133, 145 (3d Cir.1984); Wood v. Holiday Inns, Inc., 508 F.2d 167, 175 (5th Cir.1975). We have on this point considered the dissenting opinion of Justice Stevens in City of Los Angeles v. Heller, 475 U.S. 796, 800, 106 S.Ct. 1571, 1573-74, 89 L.Ed.2d 806 (1986) (Stevens, J., dissenting).
 
 
 9
 It must be concluded that the jury's verdicts in favor of the three defendant police officers on the claim for unreasonable execution of the search warrant are inconsistent with the jury's verdict against the City on the same claim. Further, the jury's verdicts in favor of the three defendant police officers on the two constitutional claims are inconsistent with the jury's verdict against the officers, in favor of Jonathan Moss, Jr., on the claim for negligence.
 
 
 10
 We recognize the need to try to reconcile the verdicts and have attempted to do so. Kirkendoll v. Neustrom, 379 F.2d 694 (10th Cir.1967).
 
 
 11
 As to the City's claim that the jury's verdict against it for the unreasonable execution of a search warrant is inconsistent with the jury's finding that none of the individual police officers were liable to plaintiffs on the same claim, the City cites City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571. This is for the proposition that a municipality cannot be held liable for a Fourth Amendment violation by police officers when the jury returns a verdict in favor of the individual police officers on the same claim, absent an instruction that the police officers could invoke an affirmative defense such as qualified immunity. Thus it argues that the jury's verdict in favor of the three police officers is inconsistent with the verdict against the City on the same claim.
 
 
 12
 There were no instructions as contemplated by Heller to permit the application of an affirmative defense by the police officers on the unreasonable execution claim. The officers were in the same position as the City on this point. Thus the jury, it would appear, imposed liability on the City despite a conclusion that the officers were not guilty of a constitutional violation.
 
 
 13
 The plaintiffs argue strongly that the policy and practice doctrine should apply to hold the City liable. The proof advanced on this point at trial was that of plaintiffs' expert and was directed to the poor operation and administration of the SWAT team. This proof simply did not reach the requirements of Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In addition, we note that the Supreme Court has rendered numerous opinions on municipal liability under Sec. 1983 that were not available to the parties or the trial court when this case was tried. See City of Canton v. Harris, --- U.S. ----, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Heller, supra.
 
 
 14
 We must conclude that the jury's verdicts on the claim for unreasonable execution of the search warrant were inconsistent.
 
 
 15
 As to the negligence claims, the three defendant police officers assert that the jury's verdict against them, in favor of Jonathan Moss, Jr., on the claim for negligence is inconsistent with the jury's verdicts in favor of the three officers on both constitutional claims.
 
 
 16
 To the extent that the negligence claim, the two constitutional claims, and the affirmative defenses to the constitutional claim for excessive force are all governed by doctrines of reasonableness, it appears that the jury's verdicts are inconsistent on this point or issue. Further, because the plaintiffs' claim for negligence covered the period "from the time the SWAT team became involved in this case, up to and including the events which transpired at the Moss household," Jury Instructions at 3, the facts giving rise to the claim are coextensive with the facts giving rise to both of the plaintiffs' constitutional claims. Thus it is impossible to determine which of the verdicts on plaintiffs' constitutional claims are implicated by this inconsistency.
 
 
 17
 Because of the interrelated nature of the claims brought in this case, we remand the entire case to the trial court for a new trial. In remanding the negligence claims to the trial court, however, we express no opinion on the validity of the argument, first raised on appeal, that the three defendant police officers enjoy official immunity for any negligence committed against the plaintiffs to the extent that their negligence does not rise to the level of a constitutional violation. See Trimble v. City and County of Denver, 697 P.2d 716 (Colo.1985), and Leake v. Cain, 720 P.2d 152 (Colo.1986).
 
 
 18
 Finally, we note the strong possibility that the inconsistencies in the verdicts returned by the jury were the result of confusion among the jurors over the instructions delivered by the trial court. The instructions were ambiguous regarding whether certain affirmative defenses applied to both of plaintiffs' constitutional claims or only the claim for excessive force. In addition, the instructions on the affirmative defenses to the claim for excessive force are contradictory and misleading.
 
 
 19
 The instructions are full of extraneous material, such as an entire page quoting Colorado statutes on the use of force by police officers making an arrest, that could only have confused the jury's view of the law governing the case. The instructions also contain four references to the fact that the search warrant was lawfully obtained, giving the incorrect impression that this somehow provides the defendants with a complete defense to plaintiffs' claims. Finally, the section of the jury instructions that outlines the constitutional claims against the City contains nothing on how the claims against the City were related to the claims against the defendant police officers.
 
 
 20
 Again, the deficiencies outlined above prevent us from harmonizing the verdicts returned by the jury and a remand is necessary.
 
 
 21
 The judgment of the trial court is REVERSED and the case is REMANDED to the trial court for further proceedings not inconsistent with this opinion.