Samuel **GIAMO**

v.

**CONGRESS MOTOR INN, CORP.,** Best Western—West Greenwich Inn, and Best Western International, Inc.

Civ. A. No. 93–0226–T.

United States District Court, D. Rhode Island.

Jan. 25, 1994.

---

Lori L. Creswell, Mandell, DeLuca & Schwartz, Ltd., Providence, RI, for plaintiff.

Patricia A. Buckley, Carroll, Kelly & Murphy, Providence, RI, for defendants.

## ORDER

TORRES, District Judge.

The Report and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on December 28, 1993 is accepted pursuant to Title 28, United States Code, Section 636(b)(1)(B).

The Defendant's motion for summary judgment is denied.

## *REPORT AND RECOMMENDATION*

LOVEGREEN, United States Magistrate Judge.

Before me is the motion for summary judgment pursuant to F.R.Civ.P. 56 filed by defendant, Best Western International, Inc. Accompanying the motion is an affidavit executed by Dorian LeFre, the legal administrator for Best Western International, Inc. This matter has been referred to me for initial review, preliminary findings and recommendation. 28 U.S.C. § 636(b)(1)(B). Based on the following discussion, I recommend that the motion for summary judgment be denied.

### *Facts*

The plaintiff, Samuel Giamo, was a paying guest at the Best Western—West Greenwich Inn in West Greenwich, Rhode Island on December 6, 1991. Plaintiff had been a guest for five or six days prior thereto. At approximately 8:00 a.m., he left his hotel room in order to go to work. It had snowed the previous evening, resulting in several inches of snow covering the ground.

In order to leave the hotel's premises, plaintiff had to drive down an inclined driveway. As he began down the driveway, his car slid and he was unable to steer or control his car. Plaintiff's car slid down the length of the driveway hitting another car while still in the driveway.

As he attempted to get out of his car, plaintiff slipped and fell on the ice which had accumulated on the driveway. As a result of the fall, the plaintiff suffered a fracture of his left arm. Plaintiff filed an amended complaint which names three separate defendants: Congress Motor Inn, Corp. ("Congress"), Best Western–West Greenwich Inn ("the Inn"); and Best Western International, Inc. ("Best Western International"). The three counts of the amended complaint allege injuries to the plaintiff as a result of his slip and fall on the Inn's driveway due to an accumulation of snow, ice and slush.

Plaintiff alleges that the defendants negligently maintained the premises and failed to warn of the slippery condition. Counts I and II of the amended complaint, addressed to Congress and the Inn respectively, specifically allege that both defendants "owned, controlled and maintained a driveway located at 103 Nooseneck Hill Road, West Greenwich, Rhode Island." Count III, addressed to Best Western International, alleges that it "was responsible for the safety, operation

and maintenance of the building and driveway located at 103 Nooseneck Hill Road, West Greenwich, Rhode Island" but does not state the basis for this allegation.

All three defendants answered, admitting that Congress owns, controls and maintains the driveway as alleged in paragraph 2 of Count I and denying all other allegations. Best Western International also raised as its Fourth Affirmative defense that "Best Western International, Inc. is a non-profit membership corporation which does not own, manage, maintain or control the Inn and/or the premises in question."

Congress is the corporate owner of the premises and does business as the Best Western—West Greenwich Inn. According to the LeFre affidavit, Best Western International is a non-profit membership corporation located in Arizona whose members are the owners and operators of independently owned hotels, motels and resorts. In addition to licensing its trade name of "Best Western" for a fee to its members, Best Western International also provides to them goods and services such as cooperative advertising and buying in exchange for a set fee. Best Western International does not share in the profits of members or derive any net income from operation of any member's property and is prohibited by Article IV(L) of its articles of incorporation from operating, managing or otherwise participating in member properties.

The membership Application and Agreement submitted by Congress to Best Western International provides at paragraph 5 that Best Western International is not a franchise organization but is operated on a cooperative basis by and for its members who are independent owners/operators. Paragraph 5 states in pertinent part:

Applicant acknowledges that the relationship of Best Western (International) to its members is one of independent contractor, that neither party to this Agreement has the power to obligate or bind the other in any way, and that no relationship of partners, joint venturers or agents is created by this Application and Agreement. It is understood that Best Western (International) has no responsibility for the use, condition or operation of the subject property, no control of or responsibility for the safety of the premises or the safety of the design of any structure of (sic) product, and that Best Western (International) has no control over or responsibility for any decision affecting the employment or supervision of any person employed in connection with the subject property.

(Application and Agreement ¶ 5 (parentheticals added.))

Defendant further states through the LeFre affidavit that it has no ownership interest in Congress, derives no net income from its operation, has no responsibility for any aspect of the day-to-day operation of the premises or the Inn, and does not have control of or responsibility for the safety of the premises at any time. The only relationship that Best Western International has with Congress and the Inn is the goods and cooperative services that Best Western International provides to it in exchange for the set fee paid.

To the LeFre affidavit, plaintiff has filed no counter affidavit nor has he filed any pleading contradicting the LeFre affidavit. At best, plaintiff asserts that there is insufficient evidence to determine what the relationship is between Congress and Best Western International and that there may be either an apparent or actual agency.

### Discussion

When determining a motion for summary judgment, I must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 820 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank of*

*Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992).

■ Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the non-moving party's case." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the onus falls upon the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing F.R.Civ.P. 56(e)); *see Goldman,* 985 F.2d at 1116; *Lawrence,* 980 F.2d at 68; *Garside,* 895 F.2d at 48 ("[A] 'genuine issue' exists if there is 'sufficient evidence supporting this claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'") (quoting *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Moreover, the evidence presented by the nonmoving party "'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" *Mesnick,* 950 F.2d at 822 (quoting *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party."

*Goldman,* 985 F.2d at 1116 (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510).

Defendant, Best Western International, argues that because it has no ownership, managerial interest in or control over the motel premises, it can owe no duty to plaintiff. If no duty is owed to plaintiff, then Best Western International cannot be negligent. *Rodrigues v. Miriam Hosp.,* 623 A.2d 456 (R.I. 1993); *Swajian v. General Motors Corp.,* 559 A.2d 1041 (R.I.1989).

Plaintiff counters with his argument that Best Western International is the principal of Congress or the Inn and, therefore, would be negligent and liable if an agency relationship existed at the time of this incident. *Alexander v. Fujitsu Business Communication Systems, Inc.,* 818 F.Supp. 462 (D.N.H.1993); *Morgan v. Lucaski,* 581 A.2d 714 (R.I.1990). Plaintiff argues there exists an apparent or actual agency here.

> An agent is cloaked with apparent authority when the principal acts in a way that causes a third party to reasonably believe that the agent is authorized to act on the principal's behalf. Apparent authority may be created by any manifestation by the principal that he has authorized or consents to the agent's conduct. Such manifestations may be verbal, written or implicit in the principal's conduct.

*American Title Ins. v. East West Financial Corp.,* 817 F.Supp. 251, 258 (D.R.I.1993) (citing *Menard & Co. Masonry Bldg. Contractors v. Marshall Bldg. Systems, Inc.,* 539 A.2d 523, 526 (R.I.1988); *Calenda v. Allstate Insurance Co.,* 518 A.2d 624, 628 (R.I.1986)).

> To establish the apparent authority of an agent to do a certain act, facts must be shown that the principal has manifestly consented to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; that a third person knew of the fact and, acting in good faith, had reason to believe and did actually believe that the agent possessed such authority; and that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal.

*McAleer v. Smith,* 791 F.Supp. 923, 934 (D.R.I.1992) (citing *Soar v. National Football League Players Ass'n.,* 438 F.Supp. 337, 342 (D.R.I.1975), *aff'd,* 550 F.2d 1287 (1st Cir.1977)).

■ Apparent authority derives from what the principal manifests to the third party and what the third party reasonably believes. *Id.*

"Apparent authority differs from actual and implied authority in that apparent authority is created by the principal's manifestations to third parties whereas actual and implied authority are created by the principal's dealings with the agent."

*American Title Ins. v. East West Financial Corp.,* 817 F.Supp. at 258.

■ Here plaintiff urges the theory of apparent authority arguing that Best Western International, through its Rules and Regulations, imposes substantial control over each member's operations. Further, Best Western International encourages third persons to think they are dealing with Best Western International when they seek and obtain lodging at a Best Western facility, and consequently, third persons reasonably believe this is so.

Plaintiff cites several decisions in support of his argument that various hotel chains have been held to be vicariously liable for the injuries suffered by a guest based upon the theory of apparent agency.

In *Crinkley v. Holiday Inns, Inc.,* 844 F.2d 156 (4th Cir.1988), the court considered whether Holiday Inns Corporation could be liable for the injuries sustained by a motel guest. The basis for the suit against Holiday Inns was the franchise agreement between Holiday Inns and Holiday Inn–Concord, the franchisee and independent owner of the property.

The *Crinkley* Court stated that even though an actual agency may not have existed, Holiday Inns Corporation's actions in holding Holiday Inn–Concord out as its agent, created the appearance of an agency and reasonably induced plaintiff to believe that such an agency existed. The Court

concluded that Holiday Inns Corporation, pursuant to the franchise agreement "retained a significant degree of control over the operation of the Holiday Inn–Concord." *Id.* at 166. This control included the use of the Holiday Inns trade name and trademarks, which appeared on numerous items in and about the motel. In addition, the Court considered that Holiday Inns provided "national advertising that promotes its material system, without distinguishing between company owned and franchised properties." *Id.* "The only indication that Holiday Inn–Concord was not owned by Holiday Inns was a sign in the restaurant that stated that the motel was operated by TRAVCO under a franchise agreement." *Id.* Based on the above, the *Crinkley* Court concluded that "the Holiday Inn was operated in such a way as to create the appearance that it was owned by Holiday Inns, Inc. and that this was one of the purposes of the franchise agreement."

In *Wood v. Holiday Inns, Inc.,* 508 F.2d 167 (5th Cir.1975), the Court considered the liability of Holiday Inns for the negligence and wrongdoing of an employee (Goynes) at a Holiday Inn facility in Phoenix City, Alabama and determined that the plaintiff submitted sufficient evidence at trial concerning the liability of Holiday Inns, Inc. on a theory of apparent authority. *Id.* at 175.

The Court found that Holiday Inns exercised a high degree of control over the hotel. The hotel owners were required to build and maintain the facility as specified by Holiday Inns and to observe strict Rules of Operation. "The agreement further provided that any substantial violation of its terms would give Holiday Inns, Inc. the right to cancel" the license. *Id.* at 176.

The Court concluded that the hotel was operated so that it would be "readily recognizable by the public as part of the national system of 'Holiday Inns.'" *Id.* at 176. There was virtually no way that the plaintiff could have known that the employees at the hotel were not servants of Holiday Inns. *Id.* at 176.

The Court concluded that there existed sufficient evidence for a jury to decide whether Holiday Inns could be liable to plaintiff on the theory of apparent authority. *Id.* at 176–177.

In *Drummond v. Hilton Hotel Corp.*, 501 F.Supp. 29 (E.D.Pa.1980), the defendant moved for summary judgment against plaintiff, a guest at the Hilton Inn who was injured in a fall at the hotel. The facility was owned by Creative Development Company which held a license/franchise agreement with Hilton. *Id.* at 30. Plaintiff argued apparent agency in that guests were led to believe they were dealing with Hilton and its servants or employees. The Court stated that a franchise relationship does not necessarily create a principal-agent relationship nor does it mean that such a relationship does not exist. *Id.* at 31. The relationship is based on the nature and extent of the control retained by the franchisor or by the actual practices of the parties. *Id.* As such, the Court found that the issue of whether Hilton held itself out to the public as the owner or operator of the Hilton Inn involves a question of fact to be determined by a jury. *Id.* at 31.

In the present case, the plaintiff has presented sufficient facts to show there is a genuine issue for trial. Here, plaintiff has submitted copies of Best Western International's Bylaws & Articles, Renovation & Refurbishing Guidelines, New Construction Guidelines, 1991 Membership Fees and 1991 Rules & Regulations. These documents demonstrate a significant influence by Best Western International in the operations of its members' facilities. For example, non-compliance with the Renovation & Refurbishing Guidelines runs the risk of making the facility ineligible for Best Western membership; the same is true for non-compliance with the New Construction Guidelines; the 1991 Rules and Regulations require the Best Western logo to be prominently displayed on the facility's premises and in all advertising and other business materials for each facility; the 1991 Rules and Regulations direct the member as to the operations of the reservation system, administration, lobby and front office, buildings, grounds, and public areas, house-keeping, guest rooms and bathrooms, and logo items and room supplies. In fact, the 1991 Rules and Regulations go so far as to direct the facility as to snow removal.

> Snow removal shall be performed when necessary by plowing and/or use of a melting compound. Icy conditions shall be corrected with an appropriate melting compound or traction providing material.

(1991 Rules & Regulations, Chapter VII, Section 700.4, p. 11.)

Based upon these materials, it is certainly arguable that a guest, such as plaintiff, could conclude that the Inn was owned by Best Western International and operated by its employees. Whether that is a reasonable conclusion under these circumstances, and a conclusion drawn by plaintiff and relied upon, is a question of fact to be resolved by the fact-finder and not by a court considering a summary judgment motion.

Defendant argues that plaintiff has offered no evidence by way of affidavit or otherwise that he relied on the representation that Best Western International owned the Inn. While defendant is correct, plaintiff's reliance is a matter of proof at trial and the decision is for the fact-finder.

Lastly, defendant argues there is no actual agency here. While defendant's argument has considerable merit, the issue of agency and which type is best left for trial and resolution by the fact-finder.

*Conclusion*

For the reasons stated, I recommend the defendant's, Best Western International, motion for summary judgment be denied.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[1] Failure to file specific objec-

1. Rule 32, Local Rules of Court; F.R.Civ.P. 72(b).

**10**

tions in a timely manner constitutes a waiver of the right to review by the district court.[2]

---

**2.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford*     *Motor Co.,* 616 F.2d 603 (1st Cir.1980).